1   XAVIER BECERRA
    Attorney General of California
2   NICKLAS A. AKERS
    Senior Assistant Attorney General
3   BERNARD A. ESKANDARI (SBN 244395)
    Supervising Deputy Attorney General
4   AMOS E. HARTSTON (SBN 186471)
    ROSE C. GOLDBERG (SBN 310196)
5   Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA 94102
     Tel: (415) 510-3816
7    Fax: (415) 703-5480
     Email: rose.goldberg@doj.ca.gov
8
    *Attorneys for Plaintiff the People of the State of*
9   *California*

10

11

12

13

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA** ex rel. Xavier Becerra, Attorney General of California,<br><br>Plaintiff,<br><br>v.<br><br>**BETSY DEVOS**, in her official capacity as Secretary of Education, and **UNITED STATES DEPARTMENT OF EDUCATION**,<br><br>Defendants. | Case No. 20-cv-3676<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**ADMINISTRATIVE PROCEDURE ACT CASE** |

**INTRODUCTION**

1.     The United States Department of Education ("ED") is flouting Congress's clear and repeated instructions to provide student loan debt relief to public servants. In recognition of the importance of public service and to help federal student loan borrowers overcome financial barriers to public interest employment, in 2007, Congress created the Public Service Loan

1

Forgiveness ("PSLF") program. Under PSLF, ED is required to forgive qualifying public servants' student loan debt. However, ED is not providing this critical relief. ED has erected numerous obstacles to forgiveness, created borrower confusion, and issued virtually categorical denials—only about 1% of applicants can access PSLF. This compromises teachers, police officers, nurses, EMTs, and other public servants' ability to support themselves and their families.

2.      Frustrated by ED's failure to implement PSLF, in 2018, Congress created an emergency relief program: the Temporary Expanded Public Service Loan Forgiveness ("TEPSLF") program. To ensure public servants' quick access to loan forgiveness after ten years of qualifying public service employment and loan payments, Congress mandated that ED implement a "simple" application method "within 60 days" of enactment of TEPSLF. Congress also expanded eligibility criteria for loan forgiveness to help public servants hurt by ED's widespread practice of misinforming borrowers about qualifying repayment plans and other program requirements.

3.      ED, however, ignored Congress's clear commands. Instead of faithfully implementing TEPSLF, ED continued to use a convoluted application process and continued denying the vast majority of applications for public service loan forgiveness.

4.      Today, two years after TEPSLF's sixty-day deadline, ED has yet to implement the simple application process mandated by Congress. As a result, the TEPSLF denial rate is staggering—at about 94%—and borrower confusion remains rampant.

5.      ED's mismanagement of Congress's public service loan relief programs is especially harmful now. As COVID-19 continues to sweep across California, ED's failure to provide promised loan forgiveness to public servants hurts our heroes. Servicemembers are helping Californians access food and medical treatment. Teachers are finding innovative ways to help our children learn and grow outside the classroom. And nurses are caring for our loved ones during their last moments of life. ED's failure to deliver on Congress's promise to these and other public servants to forgive federal student loans after ten years of faithful payments and service to our community is shameful and illegal.

6.      ED's failure to timely provide public servants with a simple application method

and meaningful opportunity for relief constitutes unlawfully withheld, unreasonably delayed, and illegal agency action in violation of the Administrative Procedure Act.

## JURISDICTION AND VENUE

7.     This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. This Court has subject-matter jurisdiction over this action because it is a case arising under federal law. 28 U.S.C. § 1331.

8.     An actual, present, and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

9.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1) because the People of the State of California reside in this district and no real property is involved in this action.

## INTRADISTRICT ASSIGNMENT

10.     Assignment to the San Francisco Division is appropriate because a substantial part of the events or omissions giving rise to the claims in this complaint occurred in the County of San Francisco. Among other events, California state agencies and institutions whose talent pools are harmed by employees and potential employees' inability to access PSLF and TEPSLF are located in the County of San Francisco. Moreover, the People of the State of California maintain an office in the San Francisco Division.

## PARTIES

11.     The People of the State of California ("California" or "People") bring this action by and through its Attorney General, Xavier Becerra, California's chief law officer. Cal. Const. art. V, § 13.

12.     Defendant Betsy DeVos is the Secretary of Education and is being sued in her official capacity. Her official address is 400 Maryland Avenue, SW, Washington, D.C. 20202.

13.     Defendant the United States Department of Education is an executive agency of the United States government. Its principal address is 400 Maryland Avenue, SW, Washington, D.C. 20202.

**FACTUAL ALLEGATIONS**

**I.     FEDERAL STUDENT LOANS**

14.     Students pursuing higher education can receive federal financial assistance under Title IV of the Higher Education Act of 1965, as amended ("HEA"), in the form of federal student loans, work-study, and grants.[1]

15.     These programs provide critical assistance to prospective and enrolled students and foster access to higher education. According to data released by ED in 2018, 72% of all undergraduates received some type of financial aid to gain access to postsecondary education.[2]

16.     ED administers various Title IV loan programs, including the Federal Family Education Loan ("FFEL") program.[3] FFEL Loans are originated and funded almost exclusively by private lenders, insured by guaranty agencies, and reinsured by the federal government.

17.     In time, Congress shifted away from the FFEL program, and in 1993, ED began administering the William D. Ford Federal Direct Loan ("Direct Loan") program.[4] Under the Direct Loan program, ED directly lends money to eligible student borrowers. The Direct Loan program is an especially important source of financing for students who cannot meet the underwriting standards of private lenders.

18.     The FFEL and Direct Loan programs operated concurrently until 2010, when the FFEL program was discontinued and the Direct Loan program expanded.[5] No new FFEL Loans have been issued since June 30, 2010, though borrowers are still repaying FFEL Loans.[6]

19.     The standard repayment term of both FFEL and Direct Loans is ten years.

20.     In addition to the ten-year Standard plan, there are several repayment plans with

---

[1] 20 U.S.C. § 1070 et seq.
[2] Nat'l Ctr. for Educ. Statistics, *2015–16 National Postsecondary Student Aid Study*, at 5 (Jan. 2018), http://nces.ed.gov/pubs2018/2018466.pdf.
[3] 20 U.S.C. § 1071 et seq.
[4] *Id.* §§ 1087a-1087j.
[5] Eric M. Fink & Roland Zullo, *Federal Student Loan Servicing: Contract Problems and Public Solutions*, at 4 (June 25, 2014), https://www.elon.edu/docs/e-web/law/faculty/Fink_Zullo_Federal_Student_Loan_Servicing_report_06_25_2014.pdf.
[6] U.S. Dep't of Educ., *FY 2018 Agency Financial Report*, at 73 (Nov. 15, 2018), https://www2.ed.gov/about/reports/annual/2018report/agency-financial-report.pdf.

varying terms of repayment. These include Income-Driven Repayment ("IDR") plans, which tailor repayment obligations to the borrower's income and family size.[7] To qualify for an IDR plan, borrowers must annually submit documentation of their income and family size.[8]

21.     Extended and Graduated repayment plans are additional alternatives to the standard repayment terms. Under the Extended plan, the term of repayment is twenty-five years.[9] Under the Graduated plan, borrowers start with lower loan payments that increase every two years.[10]

22.     The country is facing a student loan debt crisis. The student loan burden in the United States is more than $1.5 trillion and rising.[11] As of March 31, 2020, over 3.8 million California student borrowers owed more than $137 billion in federal student loans.[12]

23.     The student loan debt burden is weighing on household finances and the economy. For example, student loan debt can prevent individuals from saving for a down payment on a home, qualifying for a mortgage, or starting a small business. These activities drive economic growth and wealth creation.[13] Student debt also impacts borrowers' ability to save for retirement and, for many, can delay important life decisions such as getting married and having children. Student debt also reduces financial security and increases stress, among other impacts.[14]

---

[7] IDR is an umbrella term that encompasses several repayment plans available to borrowers that base loan payments primarily on income and family size and that extend repayment periods from the standard ten years to twenty or twenty-five years, including: Revised Pay As You Earn Repayment ("REPAYE"), Pay As You Earn Repayment ("PAYE"), Income-Based Repayment ("IBR"), and Income-Contingent Repayment ("ICR"). *See* U.S. Dep't of Educ., *If your federal student loan payments are high compared to your income, you may want to repay your loans under an income-driven repayment plan*, https://studentaid.gov/manage-loans/repayment/plans/income-driven.
[8] 34 C.F.R. §§ 682.209, 682.215.
[9] U.S. Dep't of Educ., *The Extended Repayment Plan allows you to repay your loans over an extended period of time*, https://studentaid.gov/manage-loans/repayment/plans/extended.
[10] U.S. Dep't of Educ., *The Graduated Repayment Plan starts with lower payments that increase every two years*, https://studentaid.gov/manage-loans/repayment/plans/graduated.
[11] U.S. Dep't of Educ., *Federal Student Loan Portfolio,* at Federal Student Aid Portfolio Summary, https://studentaid.gov/data-center/student/portfolio.
[12] *Id.* at Portfolio by Location.
[13] *See* Harmeet Kaur, *The Student Loan Debt is $1.6 Trillion and People are Struggling to Pay It Down*, CNN (Jan. 19, 2020), https://www.cnn.com/2020/01/19/us/student-loan-slow-repayment-moodys-trnd/index.html.
[14] *See* Diana Hembree, *New Report Finds Student Debt Burden Has 'Disastrous Domino Effect' on Millions of Americans*, Forbes (Nov. 1, 2018),

5

24.     Borrowers who enter public service fields are even more likely to face financial hardship when repaying their student loans than those who enter the private sector.[15]

25.     Public service fields generally offer lower wages than the private sector. In addition, many public service professions have credential or degree requirements that require higher education, which can result in increased student loan debt.[16]

26.     ED data show that low-to-moderate income borrowers should benefit most from the PSLF program.[17] In 2016, ED reported that almost two-thirds of borrowers on IDR plans who intended to pursue PSLF earned less than $50,000 a year.[18]

## II.     CONGRESS CREATES PSLF TO PROMOTE THE RECRUITMENT AND RETENTION OF PUBLIC SERVANTS IN CRITICAL PUBLIC SECTOR JOBS

27.     In 2007, as part of the College Cost Reduction and Access Act ("CCRAA"), Congress created the PSLF program[19] to help borrowers who want "to pursue a career in public service and be able to take those jobs . . . often at lower pay" by "reliev[ing] them[] of the huge burden of debt they face."[20]

28.     As Senator Edward Kennedy stated when the PSLF bill was approved:

> [I]t is the desire of so many of these young people to be involved in public service and to help respond to the needs in their communities. They want to be part of the solution, not part of the problem. So often, because of their indebtedness, they have to choose careers in order to deal with the indebtedness. So this legislation will open up or help us take advantage of that idealism that is out there. We are giving them a pathway to making a difference in terms of the future of our country, and I think that is enormously important. That is one of the most important parts of this legislation.[21]

---

https://www.forbes.com/sites/dianahembree/2018/11/01/new-report-finds-student-debt-burden-has-disastrous-domino-effect-on-millions-of-americans/#1fb3503012d1.

[15] *See* Consumer Fin. Prot. Bureau, *Staying On Track While Giving Back: The Cost of Student Loan Servicing Breakdowns for People Serving Their Communities*, at 19-21 (June 2017), https://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf.

[16] *See id.* at 2, 21.

[17] U.S. Dep't of Educ., *Direct Loan Public Service Loan Forgiveness*, at 23 (July 2016), https://fsaconferences.ed.gov/conferences/library/2016/NASFAA/2016NASFAADirectLoanPSLF.pdf.

[18] U.S. Dep't of Educ., *Public Service Loan Forgiveness Policy and Operations*, at 29 (Nov. 2016), http://fsaconferences.ed.gov/conferences/library/2016/2016FSAConfSession18.ppt.

[19] CCRAA § 455(m) (codified at 20 U.S.C. § 1087e(m)).

[20] 153 Cong. Rec. S11,245 (daily ed. Sept. 7, 2007) (statement of Sen. Sherrod Brown).

[21] 153 Cong. Rec. S11,258 (daily ed. Sept. 7, 2007) (statement of Sen. Edward M.

6

29.     To encourage borrowers to enter and remain in public service, Congress mandated that, through the PSLF program, ED "shall cancel the balance of interest and principal due" for public servants after 120 qualifying loan payments.[22]

30.     Qualification for PSLF is intended to be straightforward. Borrowers are eligible if they: (1) made 120 payments on their loans after October 1, 2007; (2) made these payments on outstanding Direct Loans; (3) were on a qualifying repayment plan; and (4) were employed full-time in public service while making the 120 payments and are employed in public service at the time of loan forgiveness.[23]

31.     The required 120 payments need not be consecutive.[24]

32.     Qualifying repayment plans for PSLF are IDR plans, Standard plans, or a plan with a monthly payment at least equal to the Standard plan.[25]

33.     Public servants who do not have Direct Loans may become eligible for the program by consolidating their loans into Direct Loans.[26]

34.     In October 2008, ED issued regulations, publicly committing to its obligation under PSLF to "forgive[] the principal and accrued interest that remains on all eligible loans for which loan forgiveness is requested by the borrower."[27]

35.     Under ED's regulations, qualifying public service requires that the borrower is "hired and paid by a public service organization."[28] Thus, a borrower's eligibility for PSLF is determined by their employer's status.

36.     "Public service organization" includes any government organization; not-for-profit organization classified under Section 501(c)(3) of the Internal Revenue Code; or not-for-profit, private organization that is not classified under Section 501(c)(3) if it provides qualifying "public

---

Kennedy).
[22] 20 U.S.C. § 1087e(m)(1).
[23] *Id.*
[24] *See* U.S. Dep't of Educ., *Public Service Loan Forgiveness (PSLF)*, https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service.
[25] 20 U.S.C. § 1087e(m)(1)(A).
[26] *Id.* § 1087e(m)(3)(A).
[27] 34 C.F.R. § 685.219(d).
[28] *Id.* § 685.219(b).

services" and does not engage in certain disqualifying activities.[29]

37.     Qualifying public services include, as examples, military service, law enforcement, public interest law, public education, and health care.[30]

38.     In the notice-and-comment period for these regulations, ED received numerous comments expressing concern about borrowers' ability to track their PSLF eligibility status and to access loan forgiveness.[31] Specifically, "Many commenters asked [ED] to develop a clear and simple method for the borrower, the employer, or both, to determine annually the borrower's eligibility for public service loan forgiveness . . . ."[32]

39.     In response, ED committed to developing an employment certification form that borrowers can use to document their progress towards forgiveness under PSLF.[33]

40.     ED launched the Employment Certification Form ("ECF") in 2012.[34] To be granted forgiveness under PSLF, borrowers must submit ECFs covering their 120 qualifying payments. Borrowers may submit ECFs before they are eligible for forgiveness to receive regular feedback from ED on their employment and qualifying payments. ED recommends that borrowers submit ECFs annually or when a borrower's employer changes.[35]

41.     After ten years of payments, borrowers apply for loan forgiveness using an application form—the "Public Service Loan Forgiveness (PSLF): Application for Forgiveness"—in addition to submitting ECFs.[36]

42.     ED administers the PSLF program through one loan servicer, FedLoan Servicing, operated by the Pennsylvania Higher Education Assistance Agency. ED retains ultimate

---

[29] *Id.*
[30] *Id.*
[31] Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 73 Fed. Reg. 63,232 (Oct. 23, 2008), https://www.govinfo.gov/content/pkg/FR-2008-10-23/pdf/E8-24922.pdf.
[32] *Id.* at 63,241.
[33] *Id.* at 63,241-42.
[34] U.S. Dep't of Educ., *Public Service Loan Forgiveness Data*, https://studentaid.gov/data-center/student/loan-forgiveness/pslf-data.
[35] U.S. Dep't of Educ., *Public Service Loan Forgiveness (PSLF)*, https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service.
[36] U.S. Dep't of Educ., *Public Service Loan Forgiveness (PSLF): Application for Forgiveness*, https://studentaid.gov/sites/default/files/public-service-application-for-forgiveness.pdf.

1    responsibility for administration of PSLF.

2        43.    ED uses several other loan servicers for general student loan servicing. Once a

3    borrower submits an ECF to ED documenting PSLF-qualifying employment, if the borrower's

4    servicer is not already FedLoan Servicing, the borrower's loans are generally transferred to

5    FedLoan Servicing.[37]

6    **III.    INSTEAD OF RELIEVING PUBLIC SERVANTS' STUDENT LOAN DEBT, AS
        STATUTORILY MANDATED BY CONGRESS, ED TURNS PSLF INTO A BUREAUCRATIC**
7    **NIGHTMARE**

8        44.    The first public servants became eligible for loan forgiveness in 2017, ten years

9    after Congress created PSLF. This is because the program requires at least 120 qualifying

10   monthly loan payments. As of March 31, 2020, ED has granted relief to only about 1% of the

11   nearly 146,000 PSLF applicants.[38]

12       45.    Since ED started accepting PSLF applications in October 2017, ED has granted

13   forgiveness to a mere 1,831 applicants.[39]

14       46.    The near 99% denial rate is the result of ED's pervasive mismanagement.

15       47.    ED is responsible for establishing the administrative structure necessary to fulfill

16   the PSLF program's goal of encouraging individuals to enter and continue in public service

17   employment by providing loan forgiveness to qualifying borrowers. ED, however, has abdicated

18   its responsibility; its failures are many.

19       48.    One main program failure is that ED's loan servicers, under ED's supervision and

20   control, have misled borrowers about program requirements, including which repayment plans

21   qualify. This has caused public servants to spend years making payments on loans believing they

22   were on track for PSLF when their payments did not qualify.[40] ED's failure to communicate

23   _____

24   [37] U.S. Dep't of Educ., *Public Service Loan Forgiveness (PSLF): Employment
     Certification Form*, https://studentaid.gov/sites/default/files/public-service-employment-
     certification-form.pdf.

25   [38] U.S. Dep't of Educ., *March 2020 PSLF Report* (Mar. 31, 2020),
     https://studentaid.ed.gov/sa/about/data-center/student/loan-forgiveness/pslf-data (PSLF and
26   TEPSLF approval and denial rate calculations in this complaint are based on the publicly
     available ED data.).

27   [39] *Id.*

28   [40] *See* U.S. Gov't Accountability Office, GAO-18-547, *Public Service Loan Forgiveness:*

clearly with borrowers about program requirements and appropriately supervise its loan servicers is a primary cause of this disaster.

49.     Indeed, the United States Government Accountability Office ("GAO") has found that ED's outreach to borrowers has been deficient, resulting in widespread borrower confusion about basic program requirements.[41] For example, ED failed to provide borrowers with clear information about which employers qualify under PSLF.[42]

50.     To make matters worse, ED has not provided accurate information to its PSLF servicer, the primary point of contact for PSLF applicants. According to the GAO, ED knew that its PSLF servicer's internal PSLF guidance was inaccurate, creating a risk that borrowers' applications could be improperly denied.[43]

51.     The Consumer Financial Protection Bureau ("CFPB") has also found serious shortcomings in ED's communications with borrowers. For instance, the CFPB reports that borrowers are not consistently informed that consolidating their loans causes them to lose any previous qualifying PSLF payments.[44] In addition, the CFPB found that borrowers have waited months for responses from ED's servicers about how to complete the ECF, which is required to certify fulfillment of PSLF criteria.[45]

52.     ED's mismanagement of PSLF has been particularly egregious when it comes to repayment plan requirements. Disturbingly, ED's servicers have steered borrowers into taking repayment plan actions that make them ineligible for PSLF. After borrowers have told ED's servicers that they are pursuing PSLF, ED's servicers nonetheless enroll them into a non-

---

*Education Needs to Provide Better Information for the Loan Servicer and Borrowers*, at 12-14 (Sept. 2018), https://www.gao.gov/assets/700/694304.pdf.

[41] *Id.* at 11-12.

[42] *Id.* at 18-19; *see also Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 32 (D.D.C. 2019) (holding that ED improperly changed its definition of qualifying public service employment after borrowers had made PSLF payments in reliance on ED's regulatory definition).

[43] U.S. Gov't Accountability Office, GAO-18-547, *Public Service Loan Forgiveness: Education Needs to Provide Better Information for the Loan Servicer and Borrowers*, at 16-18 (Sept. 2018), https://www.gao.gov/assets/700/694304.pdf.

[44] Consumer Fin. Prot. Bureau, *Staying On Track While Giving Back: The Cost of Student Loan Servicing Breakdowns for People Serving Their Communities*, at 38 (June 2017), https://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf.

[45] *Id.* at 37.

1   qualifying repayment plan, without telling the borrower the plan makes them ineligible for

2   PSLF.[46]

3          53.    Moreover, because of how ED has structured administration of PSLF, ED's PSLF

4   servicer finds it "challenging to determine whether borrowers are on qualifying repayment

5   plans."[47] It is no wonder, then, that PSLF servicer officials report that borrowers are "frequently

6   confused" about repayment plan requirements and sometimes do not know they have not been on

7   a qualifying repayment plan.[48]

8          54.    ED has long been aware of these issues, including its failure to provide borrowers

9   with accurate information about repayment plans. In 2010, ED approved a one-time waiver to

10  allow borrowers who had been advised by ED's servicers to enroll in an ineligible plan to receive

11  credit towards PSLF for payments made during that period.[49]

12         55.    However, this remedy was available only to a small cohort of borrowers, and

13  nearly a decade later, the GAO reports that ED's outreach is still insufficient and "borrower

14  confusion persists."[50] Indeed, ED data show that the most common reason for PSLF denials is

15  non-qualifying payments, including being in a non-qualifying repayment plan.[51]

16         56.    Members of Congress have lambasted ED for making PSLF functionally

17  inaccessible. For instance, in a June 2018 letter, several senators reprimanded ED for allowing its

18  servicers to give borrowers "inconsistent, unclear, and sometimes incorrect guidance" about

19  repayment plans, which prevents borrowers from qualifying for PSLF.[52] The senators emphasized

20  ─────────────────
         [46] *Id.* at 44.
21       [47] U.S. Gov't Accountability Office, GAO-18-547, *Public Service Loan Forgiveness:
     Education Needs to Provide Better Information for the Loan Servicer and Borrowers*, at 22 (Sept.
22   2018), https://www.gao.gov/assets/700/694304.pdf.
         [48] *Id.* at 13.
23       [49] *See* Consumer Fin. Prot. Bureau, *Staying On Track While Giving Back: The Cost of
     Student Loan Servicing Breakdowns for People Serving Their Communities*, at 44-45 (June 2017),
24   https://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf.
         [50] U.S. Gov't Accountability Office, GAO-18-547, *Public Service Loan Forgiveness:
25   Education Needs to Provide Better Information for the Loan Servicer and Borrowers*, at 13 (Sept.
     2018), https://www.gao.gov/assets/700/694304.pdf.
26       [51] U.S. Dep't of Educ., *March 2020 PSLF Report* (Mar. 31, 2020),
     https://studentaid.ed.gov/sa/about/data-center/student/loan-forgiveness/pslf-data.
27       [52] Letter from Senators Tim Kaine, Sheldon Whitehouse, Tammy Duckworth, and
     Margaret Wood Hassan to the Secretary of Education (June 19, 2018),
28   https://www.kaine.senate.gov/press-releases/kaine-whitehouse-duckworth-hassan-press-devos-

1  that ED has known about this problem for some time yet has not fixed it.

2       57.    Indeed, earlier in 2018, members of Congress faulted ED for blocking borrowers'

3  access to PSLF by allowing its PSLF servicer to misinform borrowers about repayment plan

4  criteria and creating complicated program requirements, resulting in borrowers being denied

5  PSLF due to no fault of their own.[53]

6       58.    ED's mismanagement of the PSLF program continues.

7  **IV.   CONGRESS CREATES TEPSLF AND GIVES ED SIXTY DAYS FOR IMPLEMENTATION**

8       59.    Frustrated by ED's mishandling of the PSLF program and the high denial rate, in

9  2018, Congress created the TEPSLF program as an emergency fix.[54] Congress gave ED clear

10  instructions to quickly create a new loan forgiveness application process that simplifies the

11  pathway to loan forgiveness. Specifically, Congress mandated that ED "develop and make

12  available a *simple* method for borrowers to apply for loan cancellation . . . *within 60 days* of

13  enactment of this Act."[55]

14       60.    In addition to the mandated simple application process and deadline for ED to act,

15  by design, TEPSLF expands repayment plan eligibility in an effort to address ED's failures in

16  administering PSLF.

17       61.    While under PSLF only IDR plans, Standard plans, or a plan with a monthly

18  payment at least equal to the Standard plan qualify,[56] under TEPSLF, Graduated and Extended

19  plans are also eligible.[57] Congress created this broader eligibility criterion to help borrowers hurt

20  by ED's decade-long failure to clearly communicate repayment plan requirements and its failure

21  to address misleading or false information provided by its loan servicers. As several lawmakers

22  explained, "Congress intended TEPSLF to alleviate significant challenges facing borrowers who

23

24  on-failure-to-implement-public-service-loan-forgiveness.
    [53] Letter from Senators Sheldon Whitehouse, Tim Kaine, Tammy Duckworth, and

25  Margaret Wood Hassan to the Secretary of Education (Mar. 29, 2018),
https://www.whitehouse.senate.gov/imo/media/doc/180329_PSLF%20Letter%20to%20Secretary

26  %20DeVos.pdf.
    [54] Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 315-16, 132 Stat. 348.

27      [55] *Id.* § 315 (emphasis added).
    [56] CCRAA § 455(m) (codified at 20 U.S.C. § 1087e(m)).

28      [57] Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 315, 132 Stat. 348.

Complaint for Declaratory and Injunctive Relief
Case No. 20-cv-3676

have fulfilled their public service requirements but have received bad advice from their student loan servicer or the Department about which repayment plans qualify for forgiveness under PSLF."[58]

62.     To further ensure that borrowers have a meaningful opportunity for relief, Congress required that ED remedy the pervasive borrower confusion it created. To this end, Congress instructed ED to conduct outreach that "ensure[s] that borrowers are meeting the terms and conditions of . . . loan cancellation."[59] ED must also communicate basic forgiveness requirements to all Direct Loan borrowers.

63.     Lawmakers initially authorized $350 million for TEPSLF for ED to forgive public servants' qualifying student loans on a first-come, first-serve basis.[60]

64.     Like PSLF, TEPSLF mandates that ED forgive borrowers' student loan debt if the statutory qualifications are met.

65.     TEPSLF became law on March 23, 2018.[61]

66.     Therefore, ED's sixty-day statutory deadline to establish and administer a simple application method for borrowers to apply for TEPSLF was May 22, 2018.

67.     ED has acknowledged its sixty-day deadline. On May 21, 2018, ED requested an emergency review by the Office of Management and Budget of its plan to collect information from borrowers to determine their eligibility for TEPSLF.[62] ED explained that emergency clearance was necessary in order for ED to meet Congress's sixty-day deadline. ED also acknowledged that it was required to implement "a *simple* method for borrowers to apply" by the sixty-day deadline and that "loan forgiveness [was] mandated by the new appropriations law."[63]

---

[58] Letter from twenty-five senators to the Secretary of Education (Apr. 24, 2019), https://www.kaine.senate.gov/press-releases/kaine-and-whitehouse-call-on-devos-to-fix-missteps-with-implementation-of-tepslf-program.

[59] Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 316, 132 Stat. 348.

[60] *Id.* at § 315.

[61] White House, *President Donald J. Trump Signs H.R. 1625 into Law* (Mar. 23, 2018), https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-signs-h-r-1625-law/.

[62] Notice, Agency Information Collection Activities; Comment Request; Temporary Expansion of Public Service Loan Forgiveness (TE-PSLF), 83 Fed. Reg. 24,091 (May 24, 2018), https://www.govinfo.gov/content/pkg/FR-2018-05-24/pdf/2018-11109.pdf.

[63] *Id.* (emphasis added).

68.     On May 23, 2018, in a press release, ED announced the launch of an expanded

opportunity for student loan debt forgiveness.[64] In the release, ED characterized the program as

an "expansion of the Public Service Loan Forgiveness (PSLF) Program."

69.     In launching TEPSLF, however, ED recycled the existing PSLF application

process—including the PSLF application form already in use—and added an additional step. To

apply for TEPSLF, borrowers must submit the PSLF application for forgiveness, and have that

application denied only because some or all of the loan payments were not made under a PSLF-

qualifying repayment plan, and, after applying for PSLF, send a request to ED by email to have

their eligibility for PSLF reconsidered under TEPSLF's expanded list of qualifying repayment

plans.[65]

70.     The PSLF form, which ED requires borrowers to use to apply for TEPSLF,

contains PSLF eligibility criteria, not TEPSLF criteria.[66] Rather than create a simple and

streamlined application process for TEPSLF, ED requires borrowers to apply for a program for

which they do not qualify, be denied, and then request reconsideration.

71.     In September 2018, Congress appropriated an additional $350 million to the

TEPSLF program.[67] Congress gave ED this additional funding to "ensure that even more students

can qualify for loan forgiveness under [TEPSLF] and [to] reduce[] concerns that funding

availability would limit eligibility in the immediate future."[68] This second appropriation brought

---

[64] U.S. Dep't of Educ., *U.S. Department of Education Announces Opportunity for Federal Student Loan Borrowers to be Reconsidered for Public Service Loan Forgiveness* (May 23, 2018), https://www.ed.gov/news/press-releases/us-department-education-announces-opportunity-federal-student-loan-borrowers-be-reconsidered-public-service-loan-forgiveness.

[65] U.S. Dep't of Educ., *If your PSLF application was denied because some or all of your payments were not made on a qualifying repayment plan for PSLF, you may be able to receive loan forgiveness under a temporary opportunity*, https://studentaid.ed.gov/sa/repay-loans/forgiveness-cancellation/public-service/temporary-expanded-public-service-loan-forgiveness.

[66] U.S. Dep't of Educ., *Public Service Loan Forgiveness (PSLF): Application for Forgiveness*, https://studentaid.gov/sites/default/files/public-service-application-for-forgiveness.pdf.

[67] Department of Defense and Labor, Health and Human Services, and Education Appropriations Act, 2019, and Continuing Appropriations Act, 2019, Pub. L. No. 115-245, § 313, 132 Stat. 2981.

[68] S. Rep. No. 115-289 (2019) (Conf. Rep.).

the total amount of relief available to public servants under TEPSLF to $700 million.

## V.    ED FAILS TO CREATE A SIMPLE APPLICATION METHOD OR MEANINGFULLY ADDRESS BORROWER CONFUSION

72.     As with PSLF, ED has made TEPSLF virtually inaccessible. Since the launch of TEPSLF, ED has denied about 94% of applications.[69] As a result, only 1,310 out of the millions of borrowers potentially eligible for TEPSLF have obtained relief.[70]

73.     As of March 2020, ED has awarded only about $56 million—a mere 8%—of the $700 million Congress intended public servants to receive in student loan debt relief under TEPSLF.[71]

74.     Congress's instructions to ED in the TEPSLF statute were clear: "develop and make available a *simple* method for borrowers to apply for loan cancellation . . . *within 60 days*" of TEPSLF's enactment.[72]

75.     Although ED acknowledged the sixty-day deadline, ultimately, ED missed Congress's firm deadline. Years later, ED has yet to implement TEPSLF as Congress mandated. As ED's staggering TEPSLF denial rate shows, despite Congress's deadline having past two years ago, applying for TEPSLF is far from simple.

76.     In September 2019, almost a year and a half after ED's deadline, the GAO determined that ED has "not created a borrower-friendly TEPSLF process."[73] For instance, the GAO found that ED has not provided borrowers with sufficient information about TEPSLF, noting that some of ED's key online resources do not include any information on TEPSLF.[74] In particular, the GAO found it problematic that ED's online help tool contains detailed information only for PSLF, not TEPSLF.

---

[69] U.S. Dep't of Educ., *March 2020 PSLF Report* (Mar. 31, 2020), https://studentaid.ed.gov/sa/about/data-center/student/loan-forgiveness/pslf-data.
[70] *Id.*
[71] *Id.*
[72] Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, § 315, 132 Stat. 348 (emphasis added).
[73] U.S. Gov't Accountability Office, GAO-19-595, *Public Service Loan Forgiveness: Improving the Temporary Expanded Process Could Help Reduce Borrower Confusion*, at 10 (Sept. 2019), https://www.gao.gov/assets/710/701157.pdf.
[74] *Id.* at 19-20.

77.     ED has acknowledged that it should "do[] a better job of explaining [TEPSLF] requirements to borrowers in entrance counseling and early in repayment to improve the likelihood that borrowers interested in [forgiveness] meet all of the requirements."[75]

78.     In addition, the GAO has found a risk of TEPSLF denial errors.[76] This risk derives in part from ED's failure to ensure that its TEPSLF servicer is receiving accurate loan payment histories from borrowers' other loan servicers. This compromises the accuracy of ED's qualifying payment counts.

79.     Adding insult to injury, according to the GAO, ED does not consistently inform borrowers how to contest a denied TEPSLF application.[77] While borrowers can request an additional review or file a complaint, ED does not mention these options in its denial letters. ED is obscuring these options from borrowers in part because reviews are time-consuming.[78]

80.     All of the stakeholders the GAO spoke with in its review of TEPSLF, including ED officials, ED's TEPSLF servicer, and representatives from organizations representing borrowers, agreed that ED's requirement that borrowers submit a PSLF application in order to apply for TEPSLF is confusing for borrowers. The GAO's review of borrower complaints found that borrowers expressed frustration and confusion about why they were being asked to submit an application for PSLF—a program that they knew they did not qualify for—in order to seek loan forgiveness under TEPSLF.[79]

81.     Congress also has decried ED's TEPSLF failures. In June 2018, four senators

---

[75] U.S. Dep't of Educ., *Written Testimony, Jeff Appel, Federal Student Aid, U.S. Department of Education*, congressional hearing "Broken Promises: Examining the Failed Implementation of the Public Service Loan Forgiveness Program, at 6 (Sept. 19, 2019), https://edlabor.house.gov/imo/media/doc/AppelTestimonyPSLF091919.pdf.

[76] U.S. Gov't Accountability Office, GAO-19-595, *Public Service Loan Forgiveness: Improving the Temporary Expanded Process Could Help Reduce Borrower Confusion*, at 17 (Sept. 2019), https://www.gao.gov/assets/710/701157.pdf.

[77] *Id.* at 15.

[78] *See* Stacy Cowley, *The Student Loan Appeal Process the Government Doesn't Tell You About*, N.Y. Times (Feb. 17, 2020), https://www.nytimes.com/2020/02/17/business/federal-student-loan-appeals.html.

[79] U.S. Gov't Accountability Office, GAO-19-595, *Public Service Loan Forgiveness: Improving the Temporary Expanded Process Could Help Reduce Borrower Confusion*, at 9 (Sept. 2019), https://www.gao.gov/assets/710/701157.pdf.

wrote to ED to urge ED to implement TEPSLF as required by law.[80] The senators faulted ED for creating "eligibility criteria for TEPSLF [that] are significantly more restrictive than [Congress's] legislation ever proposed." Specifically, the senators chastised ED for requiring borrowers to apply for PSLF in order to be considered for TEPSLF. They explained that, to align with the authorizing statute's requirement of a "simple" method, borrowers should be able to apply for TEPSLF without first applying for PSLF. According to the senators, "Few borrowers will understand that they should fill out a form that explicitly tells them they are not eligible."

82.     In its response to the senators' June 2018 letter, ED explained that it implemented what it believes is "the *most efficient* methodology."[81] Congress, however, instructed ED to create a method that is simple *for borrowers*, not what is most efficient for ED.

83.     Almost a year later, in April 2019, twenty-five senators wrote to ED expressing dismay at ED's gross mismanagement of TEPSLF.[82] The senators described TEPSLF as "unnecessarily complicated, confusing, and frustrating for borrowers." They concluded that ED is not in compliance with the statutory requirement to create a simple application method because ED has instead implemented a "highly complex application process."

84.     The senators also chastised ED for delaying faithful implementation of TEPSLF, stating that ED's "lack of action suggests that the Department has treated TEPSLF, and the applicants to this program, as an unwanted burden." They demanded "dramatically enhanced outreach" by ED to ensure that borrowers are aware of TEPSLF and have the information they need to access relief. The senators also specifically faulted ED for failing to conduct outreach to all Direct Loan borrowers, as mandated by statute, and demanded that ED correct its

---

[80] Letter from Senators Tim Kaine, Sheldon Whitehouse, Tammy Duckworth, and Margaret Wood Hassan to the Secretary of Education (June 19, 2018), https://www.kaine.senate.gov/press-releases/kaine-whitehouse-duckworth-hassan-press-devos-on-failure-to-implement-public-service-loan-forgiveness.
[81] U.S. Dep't of Educ., Letter to Senator Tim Kaine (Oct. 10, 2018), https://www.kaine.senate.gov/imo/media/doc/ED's%20response%20to%20Sen.%20Kaine's%20letter%2010.11.18.pdf.
[82] Letter from twenty-five senators to the Secretary of Education (Apr. 24, 2019), https://www.kaine.senate.gov/press-releases/kaine-and-whitehouse-call-on-devos-to-fix-missteps-with-implementation-of-tepslf-program.

1     noncompliance immediately.

2         85.     Members of the U.S. House of Representatives have also expressed deep concern

3     about ED's mismanagement of TEPSLF. For instance, in October 2019, forty-eight

4     representatives wrote a letter criticizing ED for "creat[ing] a disaster which completely subverts

5     Congressional intent."[83] The representatives explained that "it was never Congress's intent to

6     make these programs functionally inaccessible, which the Department has ensured by erecting a

7     series of barriers throughout the application and approval processes." The representatives also

8     faulted ED for inconsistency between its public commitment to run the TEPSLF program and its

9     failure to administer it.

10        86.     Frustrated by ED's intransigence, in September 2019, the House Subcommittee on

11    Higher Education and Workforce Investment held a public hearing on ED's failure to administer

12    PSLF and TEPSLF entitled, "Broken Promises: Examining the Failed Implementation of the

13    Public Service Loan Forgiveness Program."[84] Members of the subcommittee reprimanded ED for

14    denying essentially every TEPSLF application, in violation of Congress's clear intent to expand

15    access to relief. They also admonished ED for creating an unnavigable TEPSLF process instead

16    of the "simple" method Congress mandated.

17        87.     Members at the hearing faulted ED for not implementing the GAO's numerous

18    recommendations for bringing TEPSLF in line with its statutory design and urged ED to make an

19    immediate good faith effort to comply.

20        88.     In January 2020, after repeated warnings from Congress and more than a year and

21    a half after ED's sixty-day deadline to implement a simple TEPSLF application method, ED

22    proposed consolidating the PSLF and TEPSLF application forms.[85] The comment period for ED's

23    _____

24    [83] Letter from forty-eight U.S. representatives to the Secretary of Education (Oct. 3, 2019),
      https://porter.house.gov/sites/porter.house.gov/files/porter%20letter%20to%20devos%20re%20te

25    psl%20and%20pslf.pdf.

26    [84] *Broken Promises: Examining the Failed Implementation of the Public Service Loan
      Forgiveness Program: Hearing Before the House Comm. on Educ. and Labor*, 116th Cong. (Sept.
27    19, 2019), https://www.youtube.com/watch?v=tkVnHVvyUO4.

      [85] Notice, Agency Information Collection Activities; Comment Request; Application and
28    Employment Certification for Public Service Loan Forgiveness, 85 Fed. Reg. 5405 (Jan. 30,
      2020), https://www.govinfo.gov/content/pkg/FR-2020-01-30/pdf/2020-01715.pdf.

proposal closed on March 30, 2020. As of the filing of this complaint, the proposal has not been implemented.

89.     Even if this proposal is implemented, it would not cure ED's unlawfulness. It would not address the myriad other problems with ED's administration of TEPSLF, such as the pervasive communication, payment count, and appeals procedure failures identified by Congress, the GAO, and borrowers. In the words of one lawmaker, "this change alone does not satisfy the department's responsibility to faithfully implement the law."[86]

90.     In addition to ED's numerous failures in its administration of the PSLF and TEPSLF programs, since her appointment, Secretary DeVos has more broadly demonstrated her hostility towards these programs.

91.     Secretary DeVos has publicly rejected Congress's purpose in creating PSLF and TEPSLF: to alleviate the burden of student loan debt for public servants. At a congressional hearing, for instance, Secretary DeVos explained that she has proposed eliminating PSLF because "[w]e don't think one type of job, one type of a role, should be incentivized over another."[87]

92.     Secretary DeVos and ED, however, cannot disregard congressional commands and deadlines or block public servants from obtaining the critical relief that they were promised.

93.     Secretary DeVos and ED's attack on these programs aligns with the current administration's priorities. In each of the current administration's past four proposed budgets— for 2021,[88] 2020,[89] 2019,[90] and 2018[91]—the administration recommended eliminating PSLF.

---

[86] Cory Turner, *Education Dept. Unveils Fix for Student Loan Program's 'Bureaucratic Nightmare*,' NPR (Jan. 31, 2020), https://www.npr.org/2020/01/31/801367031/education-dept-unveils-fix-for-student-loan-programs-bureaucratic-nightmare.

[87] *Examining Policies and Priorities of the U.S. Dep't of Educ.: Hearing Before the House Comm. on Educ. and Labor*, 116th Cong. (Apr. 10, 2019) at 04:01:57 (testimony of Betsy DeVos, Secretary of Education), https://www.c-span.org/video/?459644-1/ed-ucation-policy-hearing-secretary-devos.

[88] Fiscal Year 2021 Budget of the U.S. Government, at 41, 114 (Feb. 10, 2020), https://www.whitehouse.gov/wp-content/uploads/2020/02/budget_fy21.pdf ("[T]he Budget closes loopholes currently allowing high-earning graduate-degree holding borrowers to avoid repaying their student loans, leaving taxpayers holding the bag.").

[89] Fiscal Year 2020 Budget of the U.S. Government, at 32, 115 (Mar. 11, 2019), https://www.whitehouse.gov/wp-content/uploads/2019/03/budget-fy2020.pdf.

[90] Fiscal Year 2019 Budget of the U.S. Government, at 41, 125 (Feb. 2018), https://www.govinfo.gov/content/pkg/BUDGET-2019-BUD/pdf/BUDGET-2019-BUD.pdf.

[91] Fiscal Year 2018 Budget of the U.S. Government, at 20, 33 (May 23, 2017), https://www.govinfo.gov/content/pkg/BUDGET-2018-BUD/pdf/BUDGET-2018-BUD.pdf.

94.     Despite this open hostility toward the law designed to help public servants, ED must implement TEPSLF as Congress mandated—as a meaningful opportunity for public servants to secure relief from crushing debt, so that they can serve the public while maintaining quality of life and supporting their families. At two years past ED's TEPSLF deadline, public servants have already waited far too long.

## VI.     ED's Failure to Implement TEPSLF in the Timeframe and Manner Mandated by Congress Harms California Including the State's Public Schools, Law Enforcement, and Public Hospitals

95.     ED's failure to implement TEPSLF within the statutory deadline and as mandated by Congress has caused and is causing injury to California, its public entities and institutions, and its residents.

96.     California is home to tens of thousands of borrowers that qualify for PSLF or TEPSLF. The loss of promised loan forgiveness to these borrowers injures California's public entities and institutions that rely on these borrowers as current and prospective public servants. ED's failures upset California's public workforces, disrupt California's statutory and regulatory interests and make it harder to fulfill the missions of California's public institutions, cause harm to tens of thousands of California's residents, and damage California's economy.

97.     Instead of opening a pathway to public service with the promise of loan forgiveness, ED is closing the door.

98.     Public employees who have relied on the promise of loan forgiveness through PSLF and TEPSLF have been hired into critical public service jobs in California, and the State has invested substantial resources in recruiting, hiring, and training these employees. The State relies on these employees to provide important services.

99.     California employees are leaving state service because ED has denied or is expected to deny their PSLF and TEPSLF applications and they can no longer afford to work in public service. This harms California. The State loses the investments it made in these employees' hiring, training, and development and loses experienced public servants.

100.     In addition, California needs to expend additional resources recruiting, hiring, and

training replacements for these employees.

101. Thus, California is harmed when public service employees are deterred and discouraged from staying in their public service positions by the broken promises of PSLF and TEPSLF, directly contrary to the purposes of these loan forgiveness programs to encourage and enable public service.

102. California also is harmed when its residents are deterred or discouraged from entering public service careers. The failure to implement PSLF and TEPSLF and the resulting loss of public servants adversely impacts the size and diversity of the talent pool of employees, which makes it more difficult for California's public institutions to fulfill their missions. California relies on a rich and diverse talent pool for its public employees to satisfy the missions of its public agencies and institutions.

103. California's injuries related to the talent pool of public service employees are concrete and imminent. ED's failures presently constrain California's recruitment efforts for public service employees and deter prospective employees. As problems with ED's administration of PSLF and TEPSLF have come to light, many borrowers have been deterred from entering public service. Unable to rely on PSLF and TEPSLF or to repay student loans on a public service salary without assistance, these borrowers are priced out of public service. This shrinks the pool of applicants from which the State can hire for critical jobs in public safety, education, and health care, among other fields.

104. Moreover, California residents are being discouraged from pursuing degrees and programs geared towards public service, such as teaching and social work, because PSLF and TEPSLF are functionally inaccessible and they cannot afford to repay loans on a public service salary.

105. The depletion of the talent pool from which California can hire causes the State to expend more time and to incur increased costs in its recruitment efforts. This drain on California's resources is caused by ED's mismanagement of PSLF and TEPSLF and reduces the size and diversity of the talent pool from which California can recruit.

106. Thus, ED's failures have caused and continue to cause injury to California by

21

directly and indirectly harming the workforces of California state public entities that perform

critical functions, including public schools, law enforcement agencies, and public hospitals. This

injures the ability of California's public institutions to fulfill their missions.

107.    For example, public education is a fundamental right under the California

Constitution, which provides for the formation of public schools including kindergarten,

elementary schools, secondary schools, technical schools, and state colleges.[92] California public

schools often struggle to recruit and retain qualified teachers. California educates more than six

million children in its K-12 public schools, over half of whom are economically disadvantaged.[93]

Given the pivotal role of education in California's future and because education is a fundamental

interest in California, ED's actions that harm the size and diversity of the talent pool of public

school teachers are of vital concern to the State.

108.    As another example, law enforcement is impacted by ED's failure to implement

PSLF and TEPSLF. The Attorney General is the chief law officer of California, with the

responsibility to see that the laws of the State are uniformly and adequately enforced.[94] This

includes direct supervision over district attorneys, sheriffs, and other law enforcement officers

that preserve the peace and investigate, detect, prosecute, and punish crimes. In California,

hundreds of law enforcement agencies qualify as public service employers under the PSLF and

TEPSLF programs. Public safety, law enforcement, preventing and prosecuting crime, and

improving the administration of justice are significant state interests. ED's actions that harm the

size and diversity of the talent pool of law enforcement employees are of vital concern to the

State.

109.    ED's failure to implement PSLF and TEPSLF and the resulting shrinkage of

California's talent pool is particularly injurious to the State because California is already

experiencing severe shortages in critical public service fields.

---

[92] Cal. Const., art. IX.
[93] Joseph Hayes et al., *K-12 Education, California's Future*, Public Policy Institute of California (Jan. 2020), https://www.ppic.org/wp-content/uploads/californias-future-k-12-education-january-2020.pdf.
[94] Cal. Const., art. V, § 13.

110.    For instance, California has a statewide teacher shortage, especially in important fields such as the sciences, math, and instruction for students with disabilities.[95] Survey data show that 75% of school districts in California are experiencing teacher shortages and that most of these shortages are getting worse.[96]

111.    In addition, by 2030, California is projected to suffer the worst nursing shortage in the country[97] and to face a shortfall of 8,800 primary care physicians.[98]

112.    The critical nature of student loan debt relief programs such as PSLF and TEPSLF for public service employers in recruiting and retention is widely recognized. For instance, according to the United States Department of Defense, PSLF "has been an important recruitment and retention tool for the military."[99] The Navy has also found that the "PSLF Program provides a powerful incentive for service-minded people to pursue a career in the Armed Forces of the United States, including the Navy."[100]

113.    Social worker representatives describe student loan forgiveness as "essential to recruit[ing] students to pursue degrees in social work and help[ing] those students graduating from social work programs enter into public service."[101] They further explain that programs like

---

[95] Howard Blume, *Newsom's budget includes $900 million to address California teacher shortage*, L.A. Times (Jan. 11, 2020), https://www.latimes.com/california/story/2020-01-11/newsoms-budget-includes-900-million-to-address-california-teacher-shortage.

[96] Desiree Carver-Thomas and Linda Darling-Hammond, *Addressing California's Growing Teacher Shortage: 2017 Update*, Learning Policy Institute (Feb. 8, 2017), https://learningpolicyinstitute.org/product/addressing-californias-growing-teacher-shortage-2017-update-report.

[97] *See* U.S. Dep't of Health & Human Servs., *Supply and Demand Projections of the Nursing Workforce: 2014-2030* (July 21, 2017), https://bhw.hrsa.gov/sites/default/files/bhw/nchwa/projections/NCHWA_HRSA_Nursing_Report.pdf.

[98] Ron Shinkman, *California Grapples with Growing Physician Shortage for Low-Income Patients*, California Health Report (Sept. 17, 2018), https://www.calhealthreport.org/2018/09/17/california-grapples-growing-physician-shortage-low-income-patients/.

[99] U.S. Dep't of Defense, *Information Paper* (Jan. 10, 2018), https://245cca43-392a-45aa-83d3-6f4d990b9d61.filesusr.com/ugd/c11932_b61245d2b9a846c49f718d2ce6bf6b91.pdf.

[100] U.S. Navy, *Department of Defense Information Paper* (Nov. 14, 2017), https://edlabor.house.gov/imo/media/doc/2017-11-14%20RFI%20Public%20Service%20Loan%20Forgiveness%20Impact3.pdf.

[101] Letter from Council on Social Work Education and National Association of Social Workers to Senators Lamar Alexander and Patricia Murray (July 20, 2015),

PSLF and TEPSLF are integral to recruiting social workers to support the country's need for important social services such as mental health care and child welfare. Similarly, student loan forgiveness has been described as a "powerful recruitment tool" for doctors to work in hard-to-fill positions at community health centers[102] and in health care professional shortage areas.[103]

114.　According to the National Fraternal Order of Police, student loan forgiveness is vital to states' ability to hire law enforcement professionals and to protect the public. The National Fraternal Order of Police explains that "PSLF is a benefit which allows our local, State and Federal law enforcement agencies to recruit highly trained and educated individuals that want to serve and protect for a living."[104]

115.　ED has acknowledged that Congress's public service loan forgiveness programs were designed to incentivize recruitment and retention for public service jobs. For instance, in ED's PSLF regulation, ED states that PSLF "is intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans."[105]

116.　ED's failure to implement PSLF and TEPSLF harms California in additional ways, including wasting much of the time and resources the State expends certifying borrowers' ECFs. ED requires that borrowers submit at least one ECF to be considered for PSLF and TEPSLF and encourages borrowers to submit an ECF annually or upon change of employment.[106] Borrowers,

---

https://245cca43-392a-45aa-83d3-6f4d990b9d61.filesusr.com/ugd/c11932_86a021fc534a43828d430bd749489a45.pdf.
[102] Letter from South Carolina Primary Health Care Association to Senator Lindsey Graham (May 15, 2018), https://245cca43-392a-45aa-83d3-6f4d990b9d61.filesusr.com/ugd/c11932_7629d3ebb5b4487b8234797c15d9e174.pdf.
[103] *See* Ass'n of Am. Med. Coll., *Statement for the Record Submitted by the Association of American Medical Colleges (AAMC) to the House of Representatives Committee on Small Business: "The Doctor is Out. Rising Student Loan Debt and the Decline of the Small Medical Practice,"* (June 11, 2019), https://www.aamc.org/system/files/c/1/498034-aamcstatementtothehousesmallbusinesscommitteeregardingmedicaled.pdf.
[104] Letter from National Fraternal Order of Police to Senators Lamar Alexander and Patricia Murray (Oct. 19, 2017), https://fop.net/CmsDocument/Doc/PSLF%20Letter.pdf.
[105] 34 C.F.R. § 685.219(a).
[106] U.S. Dep't of Educ., *Why and When to Submit the Employment Certification Form*, https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service/employment-certification-form.

however, may submit ECFs as frequently as they wish. To certify an ECF, employers verify the dates and full- or part-time status of the borrower's employment, as well as the nature of the employer.

117.    Certifying ECFs uses California's resources, as state employees must access and review official state records on dates and full- or part-time status of borrowers' employment.

118.    ED's denial of essentially every PSLF and TEPSLF application causes California to lose the return on its investment in certifying ECFs.

119.    In addition, ED's failure to implement TEPSLF requires the State to expend even more resources certifying ECFs than if ED had faithfully implemented TEPSLF. If ED had implemented a simple TEPSLF application process two years ago, as Congress instructed, more California public servants would have had their student loan debt forgiven sooner. Instead, ED's confusing and error-prone application process prevents California public servants from timely obtaining relief, and requires that they submit additional ECFs over a longer period of time. The State's need to expend resources certifying these additional ECFs is caused by ED's failure to timely implement TEPSLF.

120.    California, through its public colleges and universities and other state agencies, also has invested in educating and counseling borrowers, students, and employees on PSLF and TEPSLF requirements. For instance, under California law, California community colleges must annually provide employees with a summary of PSLF, information on participation requirements, and answers to common questions.[107]

121.    In addition to educating residents on PSLF and TEPSLF criteria, state agencies expend time, resources, and funds helping residents navigate ED's convoluted TEPSLF application process. For instance, state universities counsel students and alumni on TEPSLF requirements and how to overcome the barriers ED has placed in the way of TEPSLF access. These increased expenditures are fairly traceable to ED's mismanagement of TEPSLF and would not be necessary if ED had followed Congress's instruction to create a "simple" application method within sixty days.

[107] Cal. Educ. Code § 87489.

122.    ED's failure to implement PSLF and TEPSLF deprives the State of its investments in, and promised return of, a financial pathway for Californians into critical public service jobs as well as the retention incentive of debt relief for current public servants.

**VII.  ED'S FAILURE TO IMPLEMENT TEPSLF IN THE TIMEFRAME AND MANNER MANDATED BY CONGRESS HARMS CALIFORNIA BORROWERS AND RESIDENTS**

123.    ED's mismanagement of TEPSLF causes concrete and particularized injury to California by directly and indirectly harming its residents, including student loan borrowers and their families.

124.    California public servants and their families suffer substantial economic harm because of PSLF and TEPSLF's inaccessibility.

125.    Many borrowers' student loan debt constitutes a significant portion of their salary. For instance, the average student loan debt for teachers is one-third or more of their average annual salary.[108] For many doctors, their student loan debt nearly equals their annual salary.[109] In addition, the total amount of federal student loan debt among Californians who graduated between 2014 and 2016 alone exceeded $10 billion.[110]

126.    Faced with this crushing debt, Californians have planned their careers and lives around access to PSLF and TEPSLF. For instance, Californians have accepted public service jobs with lower pay than private sector jobs, relying on the promise of loan forgiveness through PSLF

---

[108] *See* Nat'l Educ. Ass'n, *Rankings of the States 2018 and Estimates of School Statistics 2019*, NEA Research, at 8 (Apr. 2019), http://www.nea.org/assets/docs/2019%20Rankings%20and%20Estimates%20Report.pdf; Anne Podolsky & Tara Kini, *How Effective Are Loan Forgiveness and Service Scholarships for Recruiting Teachers?*, Learning Policy Institute, at 1 (Apr. 2016), https://learningpolicyinstitute.org/sites/default/files/product-files/How_Effective_Are-Loan_Forgiveness_and_Service-Scholarships_Recruiting_Teachers.pdf.

[109] *See* U.S. Dep't of Labor, Bureau of Labor Statistics, Occupational Employment and Wages, Physicians and Surgeons (May 2018), https://www.bls.gov/oes/2018/may/oes291069.htm; Ass'n of Am. Med. Coll., *Statement for the Record Submitted by the Association of American Medical Colleges (AAMC) to the House of Representatives Committee on Small Business: "The Doctor is Out. Rising Student Loan Debt and the Decline of the Small Medical Practice,"* at 1 (June 11, 2019), https://www.aamc.org/system/files/c/1/498034-aamcstatementtothehousesmallbusinesscommitteeregardingmedicaled.pdf.

[110] Hans Johnson, *New Federal Data Sheds Light on Student Debt in California*, Public Policy Institute of California (Aug. 9, 2019), https://www.ppic.org/blog/new-federal-data-sheds-light-on-student-debt-in-california/.

and TEPSLF to fund their children's education, pay for the care of elderly parents, and purchase

homes. These Californians struggle to afford life necessities while burdened with student loan

debt Congress instructed ED to forgive.

127.    Californians also suffer significant indirect harms beyond economic injury.

Student loan debt is a source of anxiety, stress, and depression for borrowers.[111] High financial

debt has also been correlated with sleep disturbances,[112] obesity,[113] high blood pressure,[114] and a

number of other health problems. Moreover, borrowers with high student loan debt are more

likely to delay or forego important life milestones, such as marriage,[115] parenthood,[116] and home

ownership.[117]

128.    ED's complicated TEPSLF application process compounds the psychological

distress that borrowers endure. Borrowers must fight to overcome the obstacles ED has erected

around TEPSLF access, all while worrying about how to afford housing and support their

families.

129.    To make matters worse, interest continues to accrue on borrowers' federal student

loans while they wait for ED to make PSLF and TEPSLF accessible. Borrowers have been

deprived of a meaningful opportunity to access TEPSLF for two years, since ED's deadline to

---

[111] *See* Melanie Lockert, *Mental Health Survey: 1 in 15 High Student Debt Borrowers Considered Suicide*, Student Loan Planner (Sept. 4, 2019), https://www.studentloanplanner.com/mental-health-awareness-survey/.

[112] *See* Shannon Insler, *The Mental Toll of Student Debt: What Our Survey Shows*, Student Loan Hero (Sept. 7, 2017), https://studentloanhero.com/featured/psychological-effects-of-debt-survey-results/.

[113] *See* Eva Munster et al., *Over-indebtedness as a Marker of Socioeconomic Status and Its Association with Obesity: A Cross-Sectional Study*, BMC Pub. Health (2009), https://bmcpublichealth.biomedcentral.com/articles/10.1186/1471-2458-9-286.

[114] *See* Elizabeth Sweet et al., *The High Price of Debt: Household Financial Debt and Its Impact on Mental and Physical Health*, Soc. Sci. & Med. (2013), https://www.sesp.northwestern.edu/docs/publications/10412279465787f48b82f83.pdf.

[115] *See* Fenaba R. Addo et al., *The Changing Nature of the Association Between Student Loan Debt and Marital Behavior in Young Adulthood*, J. of Fam. & Econ. Issues (2019), https://link.springer.com/article/10.1007/s10834-018-9591-6.

[116] *See* Michael Nau et al., *Can't Afford a Baby? Debt and Young Americans*, Research in Soc. Stratification & Mobility (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5231614/.

[117] *See* Alvaro A. Mezza et al., *Student Loans and Homeownership*, Finance and Economics Discussion Series, Federal Reserve Board (2016), https://www.federalreserve.gov/econres/feds/files/2016010r1pap.pdf.

implement TEPSLF passed. The interest that has accrued during ED's delay further threatens borrowers' ability to afford life necessities and to support themselves and their families.

130.    Secretary DeVos has acknowledged that unpaid student loan debt hurts borrowers and their communities. For instance, she explained that unpaid "loans aren't just financial products. They represent students and families 'in distress' with very real implications for our economy and our future."[118]

## VIII. ED'S FAILURE TO IMPLEMENT TEPSLF IN THE TIMEFRAME AND MANNER MANDATED BY CONGRESS HARMS CALIFORNIA'S QUASI-SOVEREIGN INTERESTS

131.    ED's failure to follow Congress's instructions to create a simple application method for TEPSLF within sixty days causes concrete and particularized injury to California by directly and indirectly harming its "quasi-sovereign" interests in the health and well-being—both physical and economic—of its residents.

132.    In particular, California's interests include ensuring the financial well-being of its citizens; supporting its residents' ability to afford housing and to start and raise families; and protecting its citizens' mental and physical health.

133.    ED's failure to implement PSLF and TEPSLF impacts a substantial portion of California's population. Individual borrowers and their families have suffered and will suffer concrete harm because of PSLF and TEPSLF's inaccessibility.

134.    In addition, California residents more broadly are injured. The ability to hire and retain talented public servants is essential to California's quasi-sovereign interests in protecting its citizens' health, welfare, and safety. California relies on public servants—such as nurses, prosecutors, and teachers—to protect its interests. ED's failure to implement PSLF and TEPSLF as required impairs California's ability to hire and retain these critical public servants.

135.    Public servants with higher education, training, and qualifications are critical to the future of California.

136.    Supporting education, including for aspiring public servants, is one of the most

---

[118] U.S. Dep't of Educ., *U.S. Secretary of Education Betsy DeVos Warns of Looming Crisis in Higher Education* (Nov. 27, 2018), https://www.ed.gov/news/press-releases/us-secretary-education-betsy-devos-warns-looming-crisis-higher-education.

important functions performed by the State. In 2016-17, higher education was the third largest General Fund expenditure, accounting for 12% of General Fund resources; the majority of this funding—$12.3 billion—is divided among the state's three higher education systems.[119]

137.    States have historically been the primary regulators of education. Over time, the federal government's role in the regulation of higher education has increased. In particular, the HEA increased the role of the federal government in postsecondary education, primarily by creating the system of loans, subsidies, and grants that fund higher education to this day.

138.    California is a member of the "triad" of actors—the federal government, state governments, and accreditors—that currently regulate postsecondary education. One of the State's primary roles in the triad is consumer protection, including oversight of student loan debt.

139.    The People have a strong interest in the regulation of student loan debt within its borders. This interest includes ensuring that each actor that impacts California student loan debt does so in accordance with law. Federal law, including PSLF and TEPSLF, has a significant impact on California residents' welfare because of students' widespread reliance on federal financial aid.

140.    ED's failure to timely provide borrowers with a simple TEPSLF application method and meaningful opportunity for relief has substantial direct and indirect effects that harm the well-being of California residents, California agencies, and other state interests.

## **CLAIM 1**

### **UNLAWFULLY WITHHELD AGENCY ACTION**

141.    California incorporates by reference the foregoing paragraphs.

142.    Under the APA, a reviewing court shall compel agency action "unlawfully withheld."[120]

143.    Congress's statutory mandate was clear: ED must create a "simple" process for public servants to apply for and access TEPSLF within "60 days" of enactment of TEPSLF.

---

[119] Kevin Cook, *Higher Education Funding in California*, Public Policy Institute of California (Mar. 2017),
https://www.ppic.org/content/pubs/jtf/JTF_HigherEducationFundingJTF.pdf.
[120] 5 U.S.C. § 706(1).

29

144.    TEPSLF became law on March 23, 2018.

145.    On May 23, 2018, ED announced an expanded opportunity for loan forgiveness for public servants, which failed to meet clear statutory intent and requirements.

146.    ED's failure to implement TEPSLF frustrates Congress's statutory mandate that ED implement a simple method to apply for TEPSLF within sixty days.

147.    Instead of creating a new simple application method for TEPSLF, ED continues using a confusing and error-prone application process.

148.    Because of ED's failure to comply with a congressional statutory mandate, the denial rate for TEPSLF is about 94%. With relief unavailable to all but a small few, TEPSLF is essentially a program on paper only.

149.    Despite Congress's repeated efforts to obtain ED's compliance, ED still is not administering TEPSLF as statutorily mandated.

150.    Two years past ED's deadline, ED continues to unlawfully withhold the simple application method and meaningful opportunity for relief that Congress mandated. ED should be compelled under 5 U.S.C. § 706(1) to implement TEPSLF as Congress mandated.

## CLAIM 2

### UNREASONABLY DELAYED AGENCY ACTION

151.    California incorporates by reference the foregoing paragraphs.

152.    Under the APA, a reviewing court shall compel agency action "unreasonably delayed."[121]

153.    Congress mandated that ED create a simple process for public servants to apply for and access TEPSLF within sixty days of enactment of TEPSLF.

154.    That deadline passed on May 22, 2018.

155.    Yet, despite the passage of two years since Congress's deadline, ED has yet to create a simple method for borrowers to apply for and access TEPSLF.

156.    Almost a year and a half after ED's deadline, the GAO found widespread borrower confusion about TEPSLF and concluded that ED has "not created a borrower-friendly"

---

[121] *Id.*

30

application process.

157.    Two years after ED's statutory deadline to expand the availability of loan forgiveness, ED's TEPSLF denial rate is about 94%.

158.    ED has provided no adequate justification for its delay. In fact, this is the second chance Congress has given ED to implement a program to provide student loan debt relief to public servants. Congress first mandated that ED develop such a program more than a decade ago, when Congress enacted PSLF in 2007.

159.    ED has acknowledged its legal responsibility to timely create a simple application method for student loan debt relief for public servants under TEPSLF.[122]

160.    ED has unreasonably delayed agency action on administration of TEPSLF and should be compelled under 5 U.S.C. § 706(1) to implement TEPSLF as Congress intended.

## CLAIM 3

### AGENCY ACTION THAT IS ARBITRARY, CAPRICIOUS, OR OTHERWISE NOT IN ACCORDANCE WITH LAW

161.    California incorporates by reference the foregoing paragraphs.

162.    As noted, California believes and alleges that ED unlawfully withheld or unreasonably delayed agency action under TEPSLF. In the alternative, to the extent ED claims that it has timely implemented TEPSLF, its implementation is arbitrary and capricious or otherwise unlawful under the APA.

163.    Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

---

[122] *See, e.g.*, Notice, Agency Information Collection Activities; Comment Request; Temporary Expansion of Public Service Loan Forgiveness (TE-PSLF), 83 Fed. Reg. 24091 (May 24, 2018), https://www.govinfo.gov/content/pkg/FR-2018-05-24/pdf/2018-11109.pdf (request by ED for "emergency clearance" for its administration of TEPSLF because the "Consolidated Appropriations Act, 2018, required ED to implement an application process within 60 days of enactment" and emergency clearance is required for ED "to remain in compliance with the statutory requirements"); U.S. Dep't of Educ., Letter to Senator Tim Kaine (Oct. 10, 2018), https://www.kaine.senate.gov/imo/media/doc/ED's%20response%20to%20Sen.%20Kaine's%20le tter%2010.11.18.pdf (ED acknowledging its duty to "implement [TEPSLF's] eligibility requirements and to comply with the statutory requirement that this new opportunity be available to borrowers within 60 days of enactment of the Act").

1  otherwise not in accordance with law."[123]

2  164.  ED's implementation of TEPSLF is a "final agency action" under the APA.[124]

3  165.  Congress mandated that ED develop and administer a "simple" application process
4  and meaningful opportunity for student loan forgiveness for public servants within "60 days" of
5  the enactment of TEPSLF.

6  166.  On May 23, 2018, ED announced the launch of a new loan forgiveness program
7  for public servants, describing the program as an "expanded" opportunity for relief.

8  167.  However, instead of creating a simple application method as required by law, ED
9  created a complicated and confusing program that results in near-blanket denials.

10  168.  This frustrates Congress's mandate to simplify the loan forgiveness application
11  process for public servants and to expand access to critical debt relief. Congress mandated that
12  ED implement TEPSLF to significantly increase the number of public servants who qualify for
13  forgiveness as compared to PSLF. Yet ED designed a system that continues to systematically
14  deny applications. That system does not adhere to congressional intent and mandates to expand
15  the availability of loan forgiveness to public servants.

16  169.  ED has administered and intends to continue administering the TEPSLF program
17  not in accordance with law.

18  170.  ED's convoluted TEPSLF application process contravenes the congressional
19  statutory mandate to implement a simple method for public servants to access student loan debt
20  forgiveness. It is therefore arbitrary, capricious, an abuse of discretion, or otherwise not in
21  accordance with law, and should be held unlawful under 5 U.S.C. § 706(2)(A).

22  **DEMAND FOR RELIEF**

23  California respectfully requests that this Court enter a judgment in its favor and grant the
24  following relief:

25  A.  Declare that ED violated the APA because its failure to implement a simple
26  method to apply for TEPSLF by the statutory deadline constitutes unlawfully withheld agency

27  _____
28  [123] 5 U.S.C. § 706(2)(A).
[124] *Id.* § 704.

action;

        B.     Declare that ED violated the APA because its failure to implement a simple method to apply for TEPSLF by the statutory deadline constitutes unreasonably delayed agency action;

        C.     Declare that ED violated the APA because its failure to implement a simple method to apply for TEPSLF is arbitrary, capricious, or otherwise not in accordance with law;

        D.     Compel ED to expeditiously provide public servants with a simple process to apply for TEPSLF and a meaningful opportunity to obtain relief consistent with congressional statutory mandate;

        E.     Monitor ED's compliance; and

        F.     Grant other relief as the Court deems just and proper.

Dated: June 3, 2020                Respectfully submitted,

XAVIER BECERRA
Attorney General of California

/s/ Rose C. Goldberg
_____
ROSE C. GOLDBERG
Deputy Attorney General

*Attorneys for Plaintiff the People of the State of California*