XAVIER BECERRA
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
BERNARD A. ESKANDARI (SBN 244395)
Supervising Deputy Attorney General
AMOS E. HARTSTON (SBN 186471)
ROSE C. GOLDBERG (SBN 310196)
CHRISTOPHER M. LAPINIG (SBN 322141)
Deputy Attorneys General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102
 Tel: (415) 510-3816
 Fax: (415) 703-5480
 Email: rose.goldberg@doj.ca.gov

*Attorneys for Plaintiff the People of the State of
California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA** ex rel. Xavier Becerra, Attorney General of California**,**<br><br>Plaintiff,<br><br>v.<br><br>**BETSY DEVOS,** in her official capacity as Secretary of Education, and **UNITED STATES DEPARTMENT OF EDUCATION,**<br><br>Defendants. | Case No. 20-cv-3676-YGR<br><br>**CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:  December 15, 2020<br>Time:  2:00 pm<br>Courtroom: 1, 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1

Background ........................................................................................................................... 2

    I.      The Public Service Loan Forgiveness (PSLF) Program ........................................ 2

    II.     ED's Numerous PSLF Implementation Failures Come to Light ............................ 3

    III.    Congress Establishes the Temporary Expanded Public Service Loan
             Forgiveness (TEPSLF) Program Giving ED A Sixty-Day Deadline .................... 4

    IV.    California's APA Challenge ................................................................................... 6

Legal Standard...................................................................................................................... 6

    I.      Rule 12(b)(1) ......................................................................................................... 6

    II.     Rule 12(b)(6) ......................................................................................................... 6

Argument .............................................................................................................................. 7

    I.      The Court Has Jurisdiction to Enforce the TEPSLF Mandate Under the
             APA's Failure to Act Provision ............................................................................ 7

    II.     The TEPSLF Mandate Is Not Committed to Agency Discretion by Law.............. 8

    III.    California's Claims Are not an Improper Programmatic Challenge...................... 9

    IV.    California Has Standing......................................................................................... 12

          A.      California Sufficiently Alleges Injury to the Missions of Its Public
                   Agencies and Institutions ........................................................................ 13

          B.      California Sufficiently Alleges Economic Injuries................................. 17

          C.      California Has Standing Under the Third-Party Standing Doctrine......... 19

          D.      California Has *Parens Patriae* Standing................................................. 20

          E.      California's Injuries Are Likely Redressable by a Favorable
                   Decision................................................................................................... 22

    V.     California's APA Claims Are Adequately Pleaded ............................................ 24

Conclusion .......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

CASES

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*
    458 U.S. 592 (1982)..............................................................................................20, 21

*Am. Bar Ass'n v. U.S. Dep't of Educ.*
    370 F.Supp.3d 1 (D.D.C. 2019)........................................................................ 14

*American Association of Cosmetology Schools v. Riley*
    170 F.3d 1250 (9th Cir. 1999)........................................................................... 23

*Arizona State Legis. v. Arizona Indep. Redistricting Comm'n*
    576 U.S. 787 (2015)............................................................................................ 20

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)..................................................................................6, 7, 25

*Aziz v. Trump*
    231 F. Supp. 3d 23 (E.D. Va. 2017) ................................................................. 22

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990)............................................................................. 24

*Bank of Am. NT & SA v. Riley*
    940 F. Supp. 348 (D.D.C. 1996)........................................................................ 23

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007)............................................................................................. 7

*Bennett v. Spear*
    520 U.S. 154 (1997)........................................................................................... 21

*Cal. Cosmetology Coal. v. Riley*
    110 F.3d 1454 (9th Cir. 1997)........................................................................... 22

*California v. Azar*
    911 F.3d 558 (9th Cir. 2018).......................................................................15, 18

*California v. Bernhardt*
    No. 19-CV-06013-JST, 2020 WL 3097091 (N.D. Cal. May 18, 2020) ................ 18

*California v. Trump*
    Nos. 19-16299, 19-16336, 2020 WL 3480841 (9th Cir. June 26, 2020)............................ 16

*California v. U.S. Dep't of Educ.*
    No. 17-CV-07106-SK, 2019 WL 7669767 (N.D. Cal., Mar. 4, 2019)................................... 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Calvillo Manriquez v. DeVos*
345 F. Supp. 3d 1077 (N.D. Cal. 2018) ............................................................... 23-24

*Center for Biological Diversity v. Brennan*
571 F. Supp. 2d 1105 (N.D. Cal. 2007) ..................................................................... 7

*Challenge v. Moniz*
218 F. Supp. 3d 1171 (E.D. Wash. 2016) ................................................................ 21

*City of Los Angeles v. U.S. Dep't of Commerce*
307 F.3d 859 (9th Cir. 2002) ..................................................................................... 9

*City of New York v. U.S. Dep't of Defense*
913 F.3d 423 (4th Cir. 2019) ................................................................................... 12

*Defs. of Wildlife v. Johanns*
No. C 04-4512 PJH, 2005 WL 3260986 (N.D. Cal. Dec. 1, 2005) ......................... 21

*Dep't of Commerce v. New York*
139 S. Ct. 2551 (2019) ...................................................................................... 8, 15

*Dreier v. United States*
106 F.3d 844 (9th Cir. 1996) ................................................................................... 17

*F.D.I.C. v. Meyer*
510 U.S. 471 (1994) ............................................................................................ 21-22

*Gearhart v. United States Dep't of Educ.*
No. 19-CV-00750-YGR, 2019 WL 5535798 (N.D. Cal. Oct. 25, 2019) .............. 22, 23

*Green v. United States*
630 F.3d 1245 (9th Cir. 2011) ................................................................................. 17

*Hawaii v. Trump*
859 F.3d 741 (2017) ..................................................................................... 13, 15, 20

*Knievel v. ESPN*
393 F.3d 1068 (9th Cir. 2005) ................................................................................... 7

*Leite v. Crane Co.*
749 F.3d 1117 (9th Cir. 2014) ................................................................................... 6

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) .................................................................................... 6, 12, 22

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

4

*Lujan v. Nat'l Wildlife Fed'n*
   497 U.S. 871 (1990).............................................................................. 10

5

*Mach Mining v. EEOC*
   575 U.S. 480 (2015)............................................................................... 8

6

7

*Maryland Dept. of Human Resources v. Dept. of Health and Human Svcs.*
   763 F.2d 1441 (D.C. Cir. 1985)............................................................ 21

8

9

*Massachusetts v. EPA*
   549 U.S. 497 (2007)........................................................................12, 21

10

*Massachusetts v. Mellon*
   262 U.S. 447 (1923)............................................................................. 20

11

12

*McCarthy v. United States*
   850 F.2d 558 (9th Cir. 1988)................................................................ 17

13

14

*Mendia v. Garcia*
   768 F.3d 1009 (9th Cir. 2014).............................................................. 17

15

*Michigan v. DeVos*
   No. 3:20-CV-04478-JD, 2020 WL 5074397 (N.D. Cal. Aug. 26, 2020) .............................. 23

16

17

*Nat. Res. Def. Council v. U.S. E.P.A.*
   735 F.3d 873 (9th Cir. 2013)................................................................ 16

18

19

*Neighbors of Cuddy Mountain v. Alexander*
   303 F.3d 1059 (9th Cir. 2002).............................................................. 11

20

*Nevada Assoc. of Counties v. U.S. Dep't of Interior*
   686 Fed. App'x 407 (9th Cir. 2017) ...................................................... 11

21

22

*New York v. Scalia*
   No. 1:20-cv-01689-GHW, 2020 WL 2857207 (S.D.N.Y. June 1, 2020)............................. 20

23

24

*Newman v. Apfel*
   223 F.3d 937 (9th Cir. 2000).................................................................. 9

25

*Norton v. S. Utah Wilderness Alliance*
   542 U.S. 55 (2004)...........................................................................7, 10

26

27

*Nw. Envtl. Def. Ctr. v. Gordon*
   849 F.2d 1241 (9th Cir. 1988).............................................................. 24

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Oakley v. Devos*
    No. 20-CV-03215-YGR, 2020 WL 3268661 (N.D. Cal. June 17, 2020) ............................. 23

4

*Oregon Nat. Desert Assoc. v. U.S. Forest Serv.*
    957 F.3d 1024 (9th Cir. 2020) ........................................................................ 11

5

6

*Oregon v. Legal Servs. Corp.*
    552 F.3d 965 (9th Cir. 2009) ........................................................................... 6

7

*Oregon v. Trump*
    406 F. Supp. 3d 940 (D. Or. 2019) .................................................................... 20

8

9

*Pac. Nw. Generating Co-op. v. Bonneville Power Admin.*
    596 F.3d 1065 (9th Cir. 2010) ........................................................................... 9

10

*Perez Perez v. Wolf*
    943 F.3d 853 (9th Cir. 2019) ............................................................................. 9

11

12

*Pinnacle Armor, Inc. v. United States*
    648 F.3d 708 (9th Cir. 2011) ............................................................................. 8

13

14

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*
    279 F. Supp. 3d 1011, 1034-35 (N.D. Cal. 2018) ......................................... 15, 18

15

16

*San Francisco v. U.S. Citizenship & Immig. Servs.*
    944 F.3d 773 (9th Cir. 2019) ........................................................................... 16

17

18

*San Luis Unit Food Producers v. United States*
    709 F.3d 798 (9th Cir. 2013) ........................................................................... 11

19

*Sierra Club v. Peterson*
    228 F.3d 559 (5th Cir. 2000) ........................................................................... 12

20

21

*Sierra Forest Legacy v. Sherman*
    646 F.3d 1161 (9th Cir. 2011) ......................................................................... 20

22

23

*Singleton v. Wulff*
    428 U.S. 106 (1976) ........................................................................................ 19

24

*Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*
    565 F.3d 545 (9th Cir. 2009) ........................................................................... 11

25

26

*South Carolina v. United States*
    907 F.3d 742 (4th Cir. 2018) ............................................................................. 7

27

28

v

# TABLE OF AUTHORITIES
### (continued)

**Page**

*South Delta Water Agency v. U.S. Dept. of Interior, Bureau of Reclamation*
    767 F.2d 531 (9th Cir. 1985).................................................................... 21

*Spokeo, Inc. v. Robins*
    136 S. Ct. 1540 (2016)........................................................................... 12

*State v. Bureau of Land Mgmt.*
    No. 18-CV-00521-HSG, 2020 WL 1492708 (N.D. Cal. Mar. 27, 2020) ............................ 18

*State v. Ross*
    358 F.Supp.3d 965 (N.D. Cal. 2019) ......................................................... 17

*Table Bluff Reservation v. Philip Morris, Inc.*
    256 F.3d 879 (9th Cir. 2001) .................................................................. 17

*Washington v. Trump*
    847 F.3d 1151 (9th Cir. 2017) ............................................................13, 19

*Weingarten v. DeVos*
    No. 19-cv-2056 (DLF), 2020 WL 3412730 (D.D.C. June 22, 2020)..............................22, 23

*Weyerhaeuser Co.* v. *U.S. Fish and Wildlife Serv.*
    139 S. Ct. 361 (2018)............................................................................. 8

**STATUTES**

5 U.S.C.
    § 701(a)(2).......................................................................................8, 9
    § 706..............................................................................................6, 25

20 U.S.C.
    § 1082(a)(2)....................................................................................21, 22
    § 1087e(m) .......................................................................................2, 3

Administrative Procedure Act........................................................................*passim*

Consolidated Appropriations Act of 2018 .................................................4, 5, 7, 9

College Cost Reduction and Access Act ........................................................... 2

Student Aid and Fiscal Responsibility Act of 2009 .......................................... 3

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Article III ................................................ 12, 22, 23, 24

**TABLE OF AUTHORITIES**
**(continued)**

Page

COURT RULES

Fed. R. Civ. P. 12(b) ................................................................................ 2, 6, 17, 24

OTHER AUTHORITIES

34 C.F.R. § 685.219(a) .................................................................................. 3, 14

*PSLF Report* (Aug. 31, 2020), https://studentaid.ed.gov/sa/about/data-
   center/student/loan-forgiveness/pslf-data ........................................................ 4, 5

*Public Service Loan Forgiveness Program*, Nat'l Ass'n Student Fin. Aid Admin.
   (Oct. 9, 2019), https://www.nasfaa.org/news-item/19700/ ...................................... 3

vii

**INTRODUCTION**

The State of California brings this Administrative Procedure Act ("APA") case against Education Secretary Betsy DeVos and the United States Department of Education (collectively, "Defendants" or "ED") challenging their failure to follow Congress's directive to develop and make available a simple method for California's public servants to apply for loan forgiveness.

Congress created the Public Service Loan Forgiveness ("PSLF") program in 2007 to incentivize student loan borrowers to enter and remain in public service by providing loan cancellation after ten years. Frustrated by ED's PSLF implementation failures and 99% denial rate, Congress created the Temporary Expanded Public Service Loan Forgiveness ("TEPSLF") program in 2018 as an emergency fix. In the TEPSLF statute, Congress gave ED a clear mandate: "develop and make available a simple method for borrowers to apply for loan cancellation under this section within 60 days." ED, however, has flouted Congress's directive. More than two and a half years after Congress's deadline, ED continues to use a convoluted application method, confuse borrowers about program requirements, and deny essentially every application. ED's failure to implement the TEPSLF mandate steals the promised opportunity for debt relief from teachers, nurses, environmental scientists, government lawyers, and other public servants, including California state employees.

Defendants raise several arguments seeking to evade judicial review, including arguing the TEPSLF mandate is committed to agency discretion. However, when an agency fails to take required action by a statutory deadline, the court has jurisdiction to require prompt action under the APA. Moreover, the TEPSLF statute provides a meaningful standard for judicial review. The mere fact that some discretion is contemplated does not make agency action unreviewable. The APA specifically allows review of agency action for "abuse of discretion."

Nor, as Defendants assert, are California's APA claims an improper programmatic attack against the entire loan forgiveness program. California appropriately targets discrete agency action required by law under the TEPSLF statute, which raises manageable issues ripe for judicial review. Specifically, ED's alleged failure to take required action by a statutory deadline is appropriate for review under the APA's failure to act provision. To the extent ED claims to have

satisfied its statutory duties, its actions are ripe for review under the APA's arbitrary, capricious, and abuse of discretion provision.

Defendants' standing challenge also fails. California alleges four independent injuries traceable to Defendants' challenged conduct: (1) injury to the missions of California's public agencies and institutions resulting from borrowers leaving or being deterred from entering state service; (2) economic injuries through increased costs in recruiting, hiring, and training state employees and related to employment certifications under the loan forgiveness program; (3) third-party standing to assert the rights of California borrowers; and (4) *parens patriae* standing. The alleged injuries are reasonably plausible, as further demonstrated by the declarations of the California Community Colleges, California Environmental Protection Agency, California Air Resources Board, California Department of Human Resources, and California Department of Justice. These injuries are also redressable by a court order requiring prompt action, or a declaration of illegality and remand to the agency for further action consistent with the APA and this Court's orders.

With respect to Defendants' Rule 12(b)(6) motion, California's APA claims are plausible and sufficiently pleaded. ED improperly seeks to pre-determine the merits of California's claims and challenge California's alternative pleadings under the APA's separate unlawful action and failure to act provisions. California plausibly alleges that Defendants have either failed to act as required, or acted arbitrarily and capriciously, causing confusion and delay directly contrary to the TEPSLF mandate. The administrative record may further establish California's claims.

## BACKGROUND

### I.   THE PUBLIC SERVICE LOAN FORGIVENESS (PSLF) PROGRAM

Congress created the PSLF program to forgive eligible public servants' student loans after ten years of public service. College Cost Reduction and Access Act ("CCRAA"), Pub. L. No. 110-84, § 401, 121 Stat. 784, 800-01 (2007). The PSLF program is intended to help borrowers serving their communities, often at lower pay, by relieving them of substantial student loan debt burdens. Compl. ¶¶ 27-30; *see* CCRAA § 455(m) (codified at 20 U.S.C. § 1087e(m).

2

The PSLF program requires ED to cancel the balance of interest and principal due for an eligible borrower not in default who (1) has made 120 monthly payments on their eligible Federal Direct Loan after October 1, 2007 (under certain qualifying repayment plans);[1] (2) is employed in a public service job at the time of forgiveness; and (3) has been employed in a public service job during the period in which the borrower makes the 120 payments. Compl. ¶¶ 29-37; 20 U.S.C. § 1087e(m). Government employment at any level, including state government service, qualifies as public service employment under the program. Compl. ¶ 36; 20 U.S.C. § 1087e(m)(3)(B)(i).

ED published implementing regulations explaining that PSLF "is intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans after they satisfy the public service and loan repayment requirements of this section." 34 C.F.R. § 685.219(a). In 2012, ED introduced the Employment Certification Form ("ECF") to verify that employment qualifies under the program. Compl. ¶¶ 40.

ED administers PSLF through its Federal Student Aid office and uses FedLoan Servicing as the loan servicer for borrowers pursuing PSLF relief. ED retains ultimate responsibility for administrating the PSLF program. Compl. ¶¶ 41-44.

## II.    ED'S NUMEROUS PSLF IMPLEMENTATION FAILURES COME TO LIGHT

Congress's promise of loan forgiveness through the PSLF program remains almost entirely unrealized. ED began accepting PSLF applications in the fall of 2017, ten years after the program was established. Approval rates have been extremely low, with ED initially denying 99% of applications. *Id.* ¶¶ 44-46.[2] Substantial evidence from oversight agency reports, state

---

[1] Only Federal Direct Loans and certain repayment plans qualify for PSLF. 20 U.S.C. § 1087e(m). Previously, there were two federal student loan programs: the Federal Family Education Loan ("FFEL") Program, in which private lenders provided federally subsidized and guaranteed student loans, and the William D. Ford Federal Direct Loan Program, in which ED is the lender. The two programs operated in tandem until Congress passed the Student Aid and Fiscal Responsibility Act of 2009, which ended new FFEL loans as of 2010. All new federal student loans since 2010 are Federal Direct Loans. Borrowers with outstanding FFEL loans can consolidate into a Federal Direct Loan to become eligible for PSLF. Compl. ¶¶ 16-18.

[2] For borrowers who applied in the first two years of PSLF program eligibility, between the fall of 2017 and 2019, ED denied about 99 percent applications. Hunter B. Martin, *Education Department Releases New Data on Public Service Loan Forgiveness Program*, Nat'l Ass'n Student Fin. Aid Admin. (Oct. 9, 2019), https://www.nasfaa.org/news-item/19700/. As of ED's

(continued…)

3

attorneys general and class actions, and tens of thousands of borrower complaints show that ED

has failed to properly administer the program. *Id.* ¶¶ 44-58.

Both the United States Government Accountability Office ("GAO") and the Consumer

Financial Protection Bureau have identified numerous deficiencies in ED's implementation of

PSLF. *Id.* ¶¶ 48-55. One main program failure is that ED's loan servicers, under ED's supervision

and control, have misled borrowers about program requirements, including which repayment

plans qualify, and steered borrowers into non-qualifying repayment plans. *Id.* ¶¶ 48, 52. This has

caused public servants to spend years making payments on loans believing they were on track for

PSLF when their payments did not qualify. *See* Declaration of Randi Weingarten ¶ 7 ("[M]illions

of educators, healthcare professionals, and other public employees . . . have been sentenced to a

lifetime of debt servitude. Due to servicing errors or misinformation, many have lost years of

payments that could have qualified for loan forgiveness.").

### III. CONGRESS ESTABLISHES THE TEMPORARY EXPANDED PUBLIC SERVICE LOAN FORGIVENESS (TEPSLF) PROGRAM GIVING ED A SIXTY-DAY DEADLINE

Frustrated by ED's failures, a bipartisan group of lawmakers created the TEPSLF program

as an emergency fix. As part of the Consolidated Appropriations Act of 2018, Congress

mandated: "[T]he Secretary shall develop and make available a simple method for borrowers to

apply for loan cancellation under this section within 60 days of enactment of this Act."

Consolidated Appropriations Act of 2018 ("CAA"), Pub. L. No. 115-141 § 315, 132 Stat. 348;

Compl. ¶¶ 59-60. ED also was specifically instructed to provide improved outreach and

information to borrowers who may intend to qualify for loan cancellation "to ensure that

borrowers are meeting the terms and conditions of such loan cancellation," including improved

outreach and information to all Direct Loan borrowers. CAA § 316. Eligibility was expanded

under TEPSLF to provide loan cancellation to borrowers who made some or all of the required

payments under certain repayment plans that did not qualify under PSLF. *Id.* Congress provided

---

most recent report in August 2020, ED has granted PSLF loan relief to only 4,444 applicants,
constituting a denial rate of between 97 and 98 percent. U.S. Dep't of Educ., *August 2020 PSLF
Report* (Aug. 31, 2020), https://studentaid.ed.gov/sa/about/data-center/student/loan-
forgiveness/pslf-data.

4

$350 million (supplemented in September 2018 by an additional $350 million) for the TEPSLF program. *Id.*; Compl. ¶ 71. TEPSLF became law on March 23, 2018. Compl. ¶¶ 65, 144.

On May 23, 2018, Defendants recycled the PSLF application form already in use and added an additional step. To apply for TEPSLF, borrowers must submit the PSLF application for forgiveness, which contains PSLF, not TEPSLF eligibility criteria, have that application denied, and request to have their eligibility reconsidered under TEPSLF's expanded list of qualifying repayment plans. *Id.* ¶¶ 68-70.

In September 2019, almost a year and a half after ED's deadline, the GAO determined that ED has "not created a borrower-friendly TEPSLF process." *Id.* ¶ 156. Among other things, the GAO found that ED has not provided borrowers with sufficient information about TEPSLF. *Id.* ¶ 76. The GAO also found there is no formal process for borrowers to challenge TEPSLF decisions and that ED does not fully inform borrowers about their appeal options. *Id.* ¶ 79. Defendants have been faulted for not implementing the GAO's recommendations. *Id.* ¶¶ 80-87. As part of a September 2019 congressional hearing, ED acknowledged it should do a better job of explaining TEPSLF requirements to borrowers. *Id.* ¶ 77. Meanwhile, Secretary DeVos has openly demonstrated her hostility towards PSLF and TEPSLF. *Id.* ¶¶ 90-94. As of August 2020, ED reports that out of 36,253 TEPSLF applications, only 2,136 have been granted, constituting a denial rate of more than 94%. U.S. Dep't of Educ., *August 2020 PSLF Report* (Aug. 31, 2020), https://studentaid.ed.gov/sa/about/data-center/student/loan-forgiveness/pslf-data. Two borrowers whose TEPSLF applications were denied have submitted declarations in support of this opposition, explaining how their TEPSLF denials have upended their lives professionally and personally. *See* Declaration of Michael Giambona ¶ 38 ("After ED denied my PSLF and TEPSLF applications, I was forced to look for [private sector] work outside my full-time job to help pay off my student loans."); Declaration of Jeneé Littrell ¶ 31 ("I feel I have no choice but to leave public service, despite my passion for my work, because of my PSLF program denials.").

ED recently proposed implementation of one of the GAO's several recommendations— consolidation of the PSLF and TEPSLF application forms. Compl. ¶ 88. This recommendation

1
2
has not yet been implemented.

## IV.   CALIFORNIA'S APA CHALLENGE

3
4
5
6
California challenges ED's flouting of Congress's TEPSLF mandate by bringing three APA claims, alleging agency action that is (1) unlawfully withheld or (2) unreasonably delayed under 5 U.S.C. § 706(1), or in the alternative, (3) agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2).

7
## LEGAL STANDARD

8
## I.   RULE 12(B)(1)

9
10
11
12
13
14
15
16
17
18
19
Defendants' Rule 12(b)(1) motion tests whether this Court has subject-matter jurisdiction. Defendants argue that California's APA claims are not justiciable and California lacks standing. A Rule 12(b)(1) motion may challenge jurisdiction in one of two ways. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). First, a "facial" attack "accepts the truth of the plaintiff's allegations but asserts that they are 'insufficient on their face to invoke federal jurisdiction.'" *Id.* (internal citation omitted). The Court treats facial attacks similar to Rule 12(b)(6) motions—assuming the truth of plaintiff's allegations and drawing all inferences in favor of plaintiff. *Id.* In contrast, a "factual" attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* Here, Defendants bring a facial attack; they do not challenge the facts alleged nor do they submit declarations or other evidence that raise evidentiary issues.

20
21
22
23
24
25
"The plaintiff bears the burden of proof to establish standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" because we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal citation omitted).

26
## II.   RULE 12(B)(6)

27
28
To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

6

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a plaintiff has met the plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (internal citation omitted).

## ARGUMENT

**I.  THE COURT HAS JURISDICTION TO ENFORCE THE TEPSLF MANDATE UNDER THE APA'S FAILURE TO ACT PROVISION**

California alleges that Defendants unlawfully withheld or unreasonably delayed agency action under the TEPSLF statutory mandate. Contrary to Defendants' arguments, this claim is justiciable. The Supreme Court has explained, "when an agency is compelled by law to act within a certain time period," the court can "compel the agency to act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004) ("*SUWA*") (using the example of the statutory requirement that the Federal Communications Commission establish certain regulations "[w]ithin 6 months" would support "a judicial decree under the APA requiring the prompt issuance of regulations"). Further, this Court has found that when the text of the statute at issue shows that "Congress has imposed clear-cut, unambiguous deadlines for compliance," there is no basis "for deferring to the defendants' [decisions related to the manner and timing of compliance]." *Center for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1132 (N.D. Cal. 2007).

Here, Congress gave ED an unambiguous deadline for compliance with its TEPSLF directive. The text of the TEPSLF statute includes a clear mandate that "the Secretary shall develop and make available a simple method for borrowers to apply for loan cancellation under this section within 60 days of enactment of this Act." CAA § 315; Compl. ¶¶ 59-60. Congress's firm sixty-day deadline expired on May 22, 2018, more than two and a half years ago.

Even if ED has some discretion in meeting its statutory obligations, this Court would still have jurisdiction to ensure ED acts promptly in compliance with the statute. *SUWA*, 542 U.S. at 63-64; *see South Carolina v. United States*, 907 F.3d 742, 765 (4th Cir. 2018) (where the

7

1
2
3
4

Secretary of Energy failed to remove one metric ton of defense plutonium from the state by the statutory deadline, an injunction "will serve, in part, to ensure the delinquent agency makes serious, vigorous attempts to fulfill its statutory responsibilities") (internal quotation marks and citations omitted).

5

## II.    THE TEPSLF MANDATE IS NOT COMMITTED TO AGENCY DISCRETION BY LAW

6
7
8
9
10
11
12
13
14

Defendants' argument that the TEPSLF mandate is committed to agency discretion by law under 5 U.S.C. § 701(a)(2) and is therefore not subject to judicial review fails. The APA creates a "strong presumption favoring judicial review of administrative action." *Mach Mining v. EEOC*, 575 U.S. 480, 486 (2015) (internal quotation omitted). In applying this strong presumption, courts read § 701(a)(2) "quite narrowly" in favor of judicial review. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019) (quoting *Weyerhaeuser Co.* v. *U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018)). In other words, agencies bear a heavy burden to establish that Congress prohibited all judicial review of agency action. *Mach Mining, LLC*, 575 U.S. at 486 (internal citation omitted). ED cannot meet this heavy burden here.

15
16
17
18
19
20
21
22
23
24
25
26
27

To honor the strong presumption of judicial review, and to give effect to the command that courts set aside agency action that is an abuse of discretion, the exception under § 701(a)(2) is restricted to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Commerce*, 139 S. Ct. at 2568 (internal citations omitted). In determining whether judicial review is precluded, courts must "consider the language of the statute and whether the general purposes of the statute would be endangered by judicial review." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011) (internal quotation omitted). Here, the text and history of the TEPSLF statute provide a meaningful standard for review. The text provides a clear mandate to create a simple application method and sets a firm sixty-day deadline. TEPSLF's text and history also evince Congress's intent to address pervasive borrower confusion about the application process. Congress created TEPSLF as a fix to PSLF implementation failures, intending to expand access to public service loan forgiveness. To achieve this purpose, a simple application method

28

8

must provide meaningful opportunity for relief.

In any event, even broad grants of discretionary authority are not inconsistent with judicial review under the APA and the Ninth Circuit rarely applies the § 701(a)(2) exception. *See Perez Perez v. Wolf*, 943 F.3d 853, 862-63 (9th Cir. 2019) (collecting cases). For example, in *Pac. Nw. Generating Co-op. v. Bonneville Power Admin.*, 596 F.3d 1065, 1075-80 (9th Cir. 2010), the Court found that a statutory requirement for an agency to operate in a manner "consistent with sound business principles" was reviewable. *See also City of Los Angeles v. U.S. Dep't of Commerce*, 307 F.3d 859, 869 n.6 (9th Cir. 2002) (mandatory language that the Secretary "shall" use sampling "if he considers it feasible" is reviewable); *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) (interpretation of the statutory terms "reliable" and "currently available" are reviewable). The TEPSLF statute requiring the Secretary to "develop and make available a simple method for borrowers to apply" similarly furnishes a sufficient standard by which to judge ED's action. CAA § 315. The language does not defy meaningful judicial review and such review would not endanger the purpose of the program.

Defendants cannot meet their burden to show California's claims are not justiciable under § 701(a)(2)'s narrow exception to overcome the APA's strong presumption favoring judicial review of administrative action.

## III. CALIFORNIA'S CLAIMS ARE NOT AN IMPROPER PROGRAMMATIC CHALLENGE

Defendants next seek to characterize California's APA claims as an impermissible "programmatic challenge," pointing to the Complaint's overview of ED's long history of mismanagement of the public service loan forgiveness programs. Mot. at 14-18. This is the wrong unit of analysis. California's claims are what is at issue here and they appropriately target discrete agency action—namely, ED's failure to implement Congress's mandate that "the Secretary shall develop and make available a simple method for borrowers to apply for loan cancellation under this section within 60 days of enactment of this Act." CAA § 315. ED's broader mismanagement is important to provide context and to make plain TEPSLF's statutory purpose, but does not immunize ED's defiance of a statutory command from judicial review.

9

Further, the Supreme Court has distinguished failure to act APA claims with statutory deadlines, such as those California brings here, from programmatic challenges. In *SUWA*, the Court confirmed that a "failure to act" claim is proper when the agency fails "to promulgate a rule or take some decision by a statutory deadline." *SUWA*, 542 U.S. at 63, 65. The Court specifically distinguished such failure to act claims from broad programmatic challenges. As the Court explained in the context of claims asserting the Bureau of Land Management ("BLM") violated various nonbinding commitments in its land use plans: "*Quite unlike a specific statutory command requiring an agency to promulgate regulations by a certain date*, a land use plan is generally a statement of priorities . . . ." *Id.* at 71-72 (emphasis added). *SUWA* makes clear that the limitations on broad, generalized claims are not implicated when APA claims target *discrete* agency action *required* by law, or when the agency has a specific statutory command to act by a deadline. *Id.* at 66. Such is the case here.

Moreover, California's claims do not raise the ripeness pitfalls of a wholesale programmatic challenge untethered to discrete agency action. In *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990), the Supreme Court explained that seeking wholesale programmatic improvements under the APA without targeting discrete agency action is improper. *Id.* at 891. At issue in *Lujan* were claims alleging a host of potential legal violations by the BLM, including "failure to revise land use plans in proper fashion, failure to submit certain recommendations to Congress, failure to consider multiple use, inordinate focus upon mineral exploitation, failure to provide required public notice, [and] failure to provide adequate environmental impact statements." *Id.* This "wholesale" request for improvement was untethered to any "single BLM order or regulation, or even to a completed universe of particular BLM orders and regulations." *Id.* at 890. The Supreme Court explained that this presented incurable ripeness problems "until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation . . ." *Id.* at 891. When targeted at particular agency action, a claim is ripe for APA review even if judicial consideration would affect an entire program. *Id.* at 890 n.2.

10

Following *Lujan*, the Ninth Circuit uses a ripeness analysis in determining whether a claim is an inappropriate programmatic challenge. *See Oregon Nat. Desert Assoc. v. U.S. Forest Serv.*, 957 F.3d 1024, 1031 (9th Cir. 2020) (challenge to large number of grazing authorizations sufficiently ripe because it does not challenge entire agency management regime). California's claims pass this ripeness test. Here, Defendants are alleged to have failed to fulfill their statutory duty to develop and make available a simple application method by May 22, 2018, Congress's deadline, or acted arbitrarily, capriciously, or abused its discretion when doing so. California's claims are ripe for review because they raise manageable issues tied to specific, required agency action rather than generally challenging the entire loan forgiveness program. *See Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 554 (9th Cir. 2009) ("SREP has expressed more than a generalized dissatisfaction . . . . SREP's allegations challenge specific instances of the Forest Service's actions taken . . . and therefore constitute more than a programmatic attack . . . ."); *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1067 (9th Cir. 2002) (U.S. Forest Service's compliance with its mandatory duty to protect old growth habitat and species sufficiently ripe for APA review, even where it involved assessment of forest-wide monitoring practices, where plaintiff identified specific agency action).

The Ninth Circuit cases dismissing APA claims as improper programmatic challenges are easily distinguishable because they do not target discrete agency action, which California does here. For instance, in *Nevada Assoc. of Counties v. U.S. Dep't of Interior*, 686 Fed. App'x 407 (9th Cir. 2017), the Ninth Circuit found that a claim seeking "judicial oversight and direction of virtually the entire federal wild horse and burro management program in Nevada" without identifying any specific agency action or discrete action unlawfully withheld was foreclosed. *Id.* at 408; *see also San Luis Unit Food Producers v. United States*, 709 F.3d 798, 800-01 (9th Cir. 2013) (claims amount to a broad programmatic challenge where the Bureau of Reclamation did not have a statutory duty and claims amount to an attack on the way the Bureau operates generally without targeting discrete agency action).[3]

---

[3] The sister circuit cases relied upon by Defendants are also easily distinguishable because
(continued…)

11

1

2
     In contrast, California's APA claims target a concrete statutory mandate that concerns

3
only one aspect of ED's operations—the method for borrowers to apply for TEPSLF loan

4
cancellation. This is a discrete agency action. This Court has jurisdiction to determine whether

5
ED unlawfully withheld or unreasonably delayed agency action under the statutory mandate, or to

6
the extent ED argues it timely fulfilled its statutory duty, whether it acted arbitrarily, capriciously,

or abused its discretion when doing so.

7
## IV.   CALIFORNIA HAS STANDING

8
     Defendants next challenge California's standing. The "irreducible constitutional minimum

9
of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact,

10
(2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

11
redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

12
(citing *Lujan*, 504 U.S. at 560) (internal quotations omitted). As a sovereign state, California is

13
entitled to "special solicitude" in the standing analysis. *Massachusetts v. EPA*, 549 U.S. 497, 520

14
(2007).

15
     California alleges four separate bases for Article III injury, each of which is sufficient.

16
California alleges injury to the missions of its public agencies and institutions, which are

17
qualifying public service employers under the loan forgiveness program. When borrowers leave

18
or are deterred from entering state service as a result of ED's failure to implement TEPSLF, state

19
agencies' ability to accomplish their missions suffers. *See* Compl. ¶¶ 95-122. California also

20
alleges economic injuries through increased costs in recruiting, hiring, and training state

21
employees and increased costs related to employment certifications. *See id.* ¶¶ 98-101, 105, 116-

22
19. In addition, California alleges harm to its residents, which supports both third-party standing

23
and *parens patriae* standing. *See id.* ¶¶ 123-40. Each of these alleged injuries is fairly traceable to

24
-----

25
the APA claims did not target specific agency action. *See Sierra Club v. Peterson*, 228 F.3d 559,
569 (5th Cir. 2000) (environmental groups did not challenge agency action but rather improperly

26
challenged entire program of timber management throughout the National Forests in Texas
seeking wholesale improvement of the program); *City of New York v. U.S. Dep't of Defense*, 913

27
F.3d 423, 433 (4th Cir. 2019) (cities did not challenge specific agency action but rather
impermissibly sought court supervision of broad statutory mandate addressing widespread and

28
systemic failures in the criminal background check system likely requiring reallocating resources,
developing new administrative systems, and technical and agency expertise).

12

Defendants' failure to implement TEPSLF. In addition, contrary to Defendants' arguments, it is likely these injuries would be redressed by a favorable decision. At the pleadings stage, the Court is required to accept as true California's jurisdictional allegations. Nevertheless, California submits declarations, which further confirm the plausibility of California's standing theories.

### A.   California Sufficiently Alleges Injury to the Missions of Its Public Agencies and Institutions

California alleges that the missions of its public agencies are harmed when state employees are deterred and discouraged from staying in their positions, and when residents are deterred or discouraged from entering state service, by Defendants' failure to implement TEPSLF according to the statutory mandate. *See id.* ¶¶ 98-102. This constrains California's recruitment efforts, adversely impacts the size and diversity of the talent pool for state employment, and harms the workforce and missions of state agencies that perform critical functions including public schools, law enforcement agencies, and public hospitals. *Id.* ¶¶103-06. The complaint includes detailed allegations of harms to the missions of California's state agencies and institutions traceable to Defendants' challenged action. *See id.* ¶¶ 95-122.

Injuries to the missions of California's public institutions qualify as injury-in-fact for standing purposes. *See, e.g.*, *Hawaii v. Trump*, 859 F.3d 741, 764-65 (2017), *overruled on other grounds* 138 S.Ct. 377 (2017) (standing can be grounded in a state's interests as an operator of a public university constrained in its ability to recruit and enroll students and recruit and hire faculty, threatening its educational mission); *Washington v. Trump*, 847 F.3d 1151, 1159-61 (9th Cir. 2017) (standing can be based on states' allegations that the missions of their universities are harmed by the impact of an executive order on their faculty and students); *see also California v. U.S. Dep't of Educ.*, No. 17-CV-07106-SK, 2019 WL 7669767, at *6-7 (N.D. Cal., Mar. 4, 2019) (standing exists based on California's interest in maintaining the mission of its public universities).[4] California sufficiently alleges injury to the missions of its agencies and institutions

---

[4] Defendants' reliance on Magistrate Judge Kim's earlier dismissal is misplaced. Mot. at pp. 20-21. The causal chain of how ED's actions under the borrower-defense regulation prevented certain borrowers from attending California's public schools was sufficiently unclear that Judge Kim invited California to more clearly spell out the alleged injury and traceability in an amended

(continued…)

13

including public schools, public hospitals, law enforcement, and other state government employers. Compl. ¶¶ 103, 106-08.

Defendants argue that the alleged injuries are too speculative and California should be required to allege a more "direct link" by identifying "individual employee[s] who left state service as a direct result of having their PSLF or TEPSLF applications denied [by ED unlawfully.]" Mot. at p. 21. California's claims, however, do not depend on showing wrongful denials of individual borrower applications. Defendants' alleged failure "to develop and make available a simple method for borrowers to apply for loan cancellation" may cause borrowers to be unaware of the TEPSLF program or how to properly apply, and be unaware of appeal procedures to address widespread loan servicing errors. The failure to implement a simple application process makes the promise of loan forgiveness unreliable. Defendants acknowledge borrower confusion continues to exist and that they have not yet implemented their primary proposal for a simple application process. Congress's TEPSLF mandate requires more.

Defendants should not be permitted to disregard and disclaim the very purpose of the program it is charged with administering by claiming the alleged link to public service employment is not sufficiently direct. The very purpose of the program is to encourage borrowers to enter and continue in public service employment. Specifically, the loan forgiveness program "is intended to encourage individuals to enter and continue in full-time public service employment by forgiving the remaining balance of their Direct loans." *See* Compl. ¶ 115 (citing 34 C.F.R. § 685.219(a)). This benefits not only borrowers but also promotes the interests of public service employers like California seeking to recruit and retain them.[5] California

---

complaint. Unlike the borrower-defense regulation, the public service loan forgiveness program at issue here was specifically designed to encourage borrowers to enter and continue in public service employment, including state government service. California's complaint here sufficiently spells out the alleged state injuries and how they are traceable to Defendants' failure to implement the congressional mandate.

[5] Similarly, the alleged injuries fall within the "zone of interests" protected by the TEPSLF statute and Defendants do not argue otherwise. In addition to providing a direct benefit to borrowers, the program also promotes the interests of public service employers. *See. e.g.*, *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F.Supp.3d 1, 19 (D.D.C. 2019) ("By design . . . the PSLF statute facilitates a public service organization's recruitment of employees [and] allows public service organizations to attract and retain desirable employees and, as a result, such organizations have a significant interest in their employees' eligibility under the PSLF Program.").

14

sufficiently alleges a credible threat of harm that is reasonably probable and fairly traceable to the challenged conduct.

Further, in *California v. Azar*, 911 F.3d 558 (9th Cir. 2018), the Ninth Circuit recently rejected arguments that states should be required to identify specific employees affected by challenged agency action. In *Azar*, the Court explained that while "Appellants fault the states for failing to identify a specific woman likely to lose [employer-sponsored contraceptive] coverage[,] [s]uch identification is not necessary to establish standing." *Id.* at 572. Instead, it was sufficient that there was a reasonable probability that the challenged action would lead to women losing coverage, which would then lead to economic harm to the state. *Id.*; *see also Hawaii v. Trump*, 859 F.3d 741, 764 (9th Cir. 2017) (state's assertion that an executive order constrains their recruitment efforts for students and faculty and deters prospective students and faculty members was sufficient for standing despite government's argument that the state had not identified particular prospective students or faculty members); *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 279 F. Supp. 3d 1011, 1034-35 (N.D. Cal. 2018) (California and other states who employ DACA recipients and have invested resources in hiring and training sufficiently alleged injury-in-fact traceable to the termination of DACA based on allegations they will lose these employees), *aff'd sub nom. Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476 (9th Cir. 2018), and *rev'd in part, vacated in part sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020).

California does not allege a highly attenuated or hypothetical chain of events that depends on guesswork or pure speculation. Continued confusion about the application process and perceived unavailability of loan forgiveness will have "predictable effects" on the choices of borrowers who, as intended, rely on the promise of loan forgiveness when taking lower paying state jobs. *See U.S. Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565-66 (2019) (explaining that standing is present when the theory of harm "does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties," and finding third-parties will likely react in predictable ways to the

15

census citizenship question); *San Francisco v. U.S. Citizenship & Immig. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019) ("To be sure, the predicted result is premised on the actions of third parties, but this type of 'predictable effect of Government action on the decisions of third parties' is sufficient to establish injury in fact.") (citation omitted). For standing purposes, "[A] causal chain does not fail simply because it has several 'links,' provided those links are not 'hypothetical or tenuous' and remain 'plausib[le].'" *California v. Trump*, Nos. 19-16299, 19-16336, 2020 WL 3480841, at *8 (9th Cir. June 26, 2020) (citations omitted); *see Nat. Res. Def. Council v. U.S. E.P.A.*, 735 F.3d 873, 878 (9th Cir. 2013) (it is sufficient that there is a "credible threat that a probabilistic harm will materialize" which ensures that the concept of "actual or imminent" harm required for standing is not stretched beyond its purpose (citations omitted)).

Nevertheless, to further support the plausibility of its allegations, California provides the Court with declarations detailing how Defendants' actions are injuring state agencies. *See, e.g.*, Declaration of Gina Browne, ¶ 56  ("When faculty and staff leave their employment with the California Community Colleges because of . . . problems accessing the relief promised under the PSLF programs, our ability to educate Californians and prepare them to contribute to California's economy and civic life suffers."); Declaration of Adria Jenkins-Jones, ¶ 52 ("ED's failure to properly and effectively implement the PSLF impairs CalHR's ability to fulfill its mission to recruit and retain the qualified, diverse workforce necessary to provide critical services to California residents."); Declaration of Serena McLlwain, ¶ 51 ("CalEPA must divert resources from substantive programs and projects critical to its mission to the additional hiring and training necessary because of the human capital gap resulting from [PSLF and TEPSLF] inaccessibility."); Declaration of Edna Murphy, ¶ 18  ("A number of CARB employees . . . reported that the difficulty of accessing relief under the PSLF program makes it more likely that they will seek employment outside of California state service in the future."); Declaration of Angela Sierra, ¶ 28 ("The PSLF program is important to CalDOJ, which employs a significant number of attorneys, because attorneys tend to have significant student loan debt from law school."); *see also, e.g.*, Browne Decl. ¶¶ 27-32, 57; Jenkins-Jones Decl. ¶¶ 24-26, 46-51; McLlwain Decl. ¶¶ 28-33, 42-

16

52; Murphy Decl. ¶¶ 7, 15-20.[6] These declarations further demonstrate the plausibility of California's allegations and that the alleged harms are not too speculative to support state standing.

Defendants' argument that California has not excluded other possible factors influencing the decisions of borrowers also misses the mark. The constitutional traceability requirement "is less demanding than a proximate cause standard." *State v. Ross*, 358 F.Supp.3d 965, 1006 (N.D. Cal. 2019). "[W]hat matters is not the length of the chain of causation, but rather the plausibility of the links that comprise the chain." *Mendia v. Garcia*, 768 F.3d 1009, 1012-13 (9th Cir. 2014). The key question is whether the "government's unlawful conduct is at least a substantial factor motivating the third parties' actions." *Id.* at 1013 (citations and quotations omitted). California sufficiently alleges that the meaningful availability of loan forgiveness is a substantial factor encouraging individuals to enter and continue in state employment. This is more than plausible; it can hardly be disputed and nevertheless must be assumed true for purposes of this motion.

In sum, the alleged harm to the missions of California's public agencies and institutions is not so speculative as to render the controversy a hypothetical one. The alleged harms are plausible and sufficiently pleaded.

## B.   California Sufficiently Alleges Economic Injuries

California also alleges economic injuries through increased costs in recruiting, hiring, and training state employees. *See* Compl. ¶¶ 98-100. In addition, California alleges harm in connection with increased costs certifying state employment under the loan forgiveness programs using Defendants' Employment Certification Form. *Id.* ¶¶ 116-19. Further, through its

---

[6] The Court may review this evidence. "On a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), proof of jurisdictional facts may be supplied by affidavit, declaration, or any other evidence properly before the court, in addition to the pleadings challenged by the motion." *Green v. United States*, 630 F.3d 1245, 1248 n.3 (9th Cir. 2011) (citing *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007)); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). These facts too are viewed in the light most favorable to California. *See, e.g.*, *Table Bluff Reservation v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (court "must accept as true all material allegations of the complaint and any other particularized allegations of fact, in affidavits or in amendments to the complaint"); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (when considering items outside the pleading, courts will "resolve all disputes of fact in favor of the non-movant").

community colleges, California is required to invest in educating employees on PSLF

requirements to help them navigate Defendants' convoluted loan forgiveness application process.

*Id.* ¶¶ 120-22. These economic injuries constitute an independent basis for standing.

In *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, the Northern District of

California recently found similar allegations of increased costs of recruiting, hiring, and training

employees sufficient to support state standing in the context of challenging the rescission of

DACA. 279 F. Supp. 3d at 1034-35 (California and other states who employ DACA recipients

and have invested resources in hiring and training sufficiently allege injury-in-fact traceable to the

termination of DACA based on allegations they will lose these employees and they will need to

expend additional resources to hire and train replacements); *see also California v. Bernhardt*, No.

19-CV-06013-JST, 2020 WL 3097091, at *5 (N.D. Cal. May 18, 2020) (finding alleged economic

harm based on weakening of federal environmental protections, which will increase the burden on

the State, sufficient for standing); *State v. Bureau of Land Mgmt.*, No. 18-CV-00521-HSG, 2020

WL 1492708, at *4 (N.D. Cal. Mar. 27, 2020) ("Monetary expenditures to mitigate and recover

from harms that could have been prevented absent [challenged action] are precisely the kind of

'pocketbook' injury that is incurred by the state itself.").

The Ninth Circuit also found allegations of increased state costs sufficient for state

standing in *California v. Azar*. There the court found it reasonably probable that a federal rule

exempting employers from covering contraceptive care in group health plans "will

inflict economic harm to the states" because "women who lose coverage will seek contraceptive

care through state-run programs or programs that the states are responsible for reimbursing." 911

F.3d at 571-72.

Likewise, here California sufficiently alleges increased costs in connection with

recruiting, hiring, and training when state employees leave state service, as well as increased costs

certifying state employment under the loan forgiveness programs when borrowers are required to

submit additional ECFs beyond what should be required if a simple TEPSLF application was

available. To verify that their employment qualifies under the forgiveness programs, borrowers

18

must have their employers certify the details of their employment using ED's ECF form.

To further support that these alleged injuries are reasonably probable, California submits declarations further explaining these injuries. *See, e.g.*, Browne Decl. ¶ 47 ("[T]he California Education Code requires the California Community Colleges Chancellor's Office to develop materials designed to increase awareness among community college faculty of the PSLF program and its requirements."); Jenkins-Jones Decl. ¶ 37 ("Certification of state employees' ECFs requires a substantial amount of time and resources from CalHR and other California departments and agencies."); McLlwain Decl. ¶ 40  ("CalEPA [] expends time and resources promoting the PSLF program as a benefit for prospective and current employees who meet the PSLF program eligibility criteria."); Sierra Dec. ¶ 37 ("CalDOJ certification of the PSLF program application requires additional staff time and resources, on top of those already expended certifying ECFs."); *see also, e.g.*, Browne Decl. ¶¶ 33-54; Jenkins-Jones Decl. ¶¶ 27-35, 36-45; McLlwain Decl. ¶¶ 34-41. California's allegations of increases in state costs associated with ED's failure to implement TEPSLF are sufficient to support standing.

### C.   California Has Standing Under the Third-Party Standing Doctrine

Under the third-party standing doctrine, California can pursue the rights of its residents whose student loan debt burdens are "inextricably bound up" in California agencies' ability to fulfill their missions. The inaccessibility of student loan debt relief deters Californians from entering and remaining in state service. This hampers California agencies' ability to recruit and retain the employees it needs to advance their missions in critical fields such as education, environmental protection, and law enforcement. Compl. ¶¶ 123-130; *see Washington v. Trump*, 847 F.3d 1151, 1160 (9th Cir. 2017) (finding the "third party standing" doctrine gives states standing to assert the rights of state university students and faculty affected by an executive order banning entry of certain groups into the country); *Singleton v. Wulff*, 428 U.S. 106, 114-16 (1976) (where the litigant has a close relationship to the third party and the third party faces obstacles in asserting their own right, third-party standing may apply).

### D.   California Has *Parens Patriae* Standing

California brings this action on behalf of itself and as *parens patriae* in protecting the health and well-being of its residents. Defendants do not dispute that California meets the requirements of *parens patriae* standing. Defendants instead argue that states may not sue the federal government as *parens patriae*. Mot. at 18-19. Specifically, Defendants claim California is prohibited from asserting *parens patriae* standing because of the so-called "*Mellon* bar," which limits a state's ability to assert *parens patriae* interests against the federal government. *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923).

Contrary to Defendants' assertion that clear authority precludes California from asserting standing as *parens patriae*, this is a confusing and unsettled area of law. *See, e.g.*, *New York v. Scalia*, No. 1:20-cv-01689-GHW, 2020 WL 2857207, at *12-13 (S.D.N.Y. June 1, 2020) (declining to "wade into this doctrinal morass") (citing cases). Even the Supreme Court has acknowledged this area of law is unclear. *See Arizona State Legis. v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 802 n.10 (2015) (noting that the "cases on the standing of states to sue the federal government . . . are hard to reconcile") (quotation marks and citation omitted).

Courts in the Ninth Circuit often find state standing on other grounds and decline to weigh in on the limits of *parens patriae* standing to sue the federal government. *See, e.g.*, *Hawaii*, 859 F.3d at 765 n.6 (declining to reach issue of *parens patriae* standing, finding state standing to challenge Muslim ban on other grounds); *Oregon v. Trump*, 406 F. Supp. 3d 940, 956 n.3 (D. Or. 2019) (declining to reach *parens patriae* standing, finding state standing to challenge withholding of federal funds from jurisdictions that refuse to assist immigration authorities on other grounds).[7]

The primary cases Defendants rely on likewise mention limitations on *parens patriae* in dicta and find that state standing exists. For instance, both *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161 (9th Cir. 2011), and *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982),

---

[7] The Eastern District of Washington recently broke tradition, finding state standing to sue Secretary DeVos and ED both on behalf of the state and as *parens patriae*. *Washington v. DeVos*, No. 2:20-CV-0182, 2020 WL 3125916, at *11 (E.D. Wash. June 12, 2020) (State of Washington, on behalf of itself and as *parens patriae*, sufficiently identified injuries as a result of ED's challenged eligibility restrictions under the CARES Act harming state institutions and students).

ruled in favor of state standing. The *Snapp* Court specifically raised doubts that the *Mellon* bar would extend to cases like this one, where a state challenges federal agency action in district court, instead of in the Supreme Court's original jurisdiction at issue there. *See Snapp*, 458 U.S. at 610-12 (Brennan, J., concurring). Further, in *Massachusetts v. EPA*, the Supreme Court rejected the argument that the *Mellon* bar "cast[s] significant doubt on a State's standing to assert a quasi-sovereign interest . . . against the Federal Government," holding that "*Mellon* itself disavowed any such broad reading." 549 U.S. at 520 n.17.

California submits that the best-reasoned approach in this unsettled area of law is that the *Mellon* bar is a prudential limitation that does not bar states' standing to sue the federal government as *parens patriae* where Congress waives its sovereign immunity. This is because the *Mellon* bar constitutes a prudential, judge-made limitation that can be abrogated by Congress. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997) ("[J]udicially self-imposed limits on the exercise of federal jurisdiction . . . can be modified or abrogated by Congress.") (quotation marks and citations omitted); *Challenge v. Moniz*, 218 F. Supp. 3d 1171, 1177-79 (E.D. Wash. 2016) (limit on states suing the federal government as *parens patriae* is a prudential limitation waived when Congress authorizes suit).

Although the Ninth Circuit has not yet determined if the APA or the HEA, the two statutes at issue here, abrogate the *Mellon* bar, both statutes include a waiver of sovereign immunity allowing suits against the federal government. Specifically, Section 702 of the APA waives sovereign immunity, allowing suits against federal agencies. *South Delta Water Agency v. U.S. Dept. of Interior, Bureau of Reclamation*, 767 F.2d 531, 536 (9th Cir. 1985). States are among those authorized to sue under the APA. *See Defs. of Wildlife v. Johanns*, No. C 04-4512 PJH, 2005 WL 3260986, at *5 (N.D. Cal. Dec. 1, 2005) ("[P]ersons entitled to sue under the APA include states, state agencies, and governments.") (citing *Maryland Dep't of Human Res. v. Dep't of Health and Human Servs.*, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985)). The HEA also includes a sue-or-be-sued provision waiving sovereign immunity. 20 U.S.C. § 1082(a)(2) ("the Secretary may . . . sue or be sued . . . in any district court of the United States"); *F.D.I.C. v.*

*Meyer*, 510 U.S. 471, 481 (1994) ("agencies authorized to 'sue and be sued' are presumed to have fully waived immunity") (quotation mark omitted). Based on these waivers of sovereign immunity, the Court should apply only the Article III constitutional minimum requirements of standing and find that California has standing to sue as *parens patriae* here.[8]

### E.   California's Injuries Are Likely Redressable by a Favorable Decision

Defendants' argument that California's alleged injuries are not redressable should be rejected. The redressability element of standing tests whether the plaintiff's injury "likely . . . will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (quotation marks omitted). California requests: (1) a declaration that ED violated the APA because its failure to implement a simple method to apply for TEPSLF by the statutory deadline constitutes unlawfully withheld agency action or unreasonably delayed agency action or, in the alternative; (2) a declaration that ED violated the APA because its failure to implement a simple method to apply for TEPSLF is arbitrary, capricious, or otherwise not in accordance with law; (3) compel ED to expeditiously provide public servants with a simple process to apply for TEPSLF and a meaningful opportunity to obtain relief consistent with congressional statutory mandate; (4) monitor ED's compliance; and (5) grant other relief as the Court deems just and proper. Compl. at 32-33.

Contrary to Defendants' argument, this Court has found that the HEA's anti-injunction provision, 20 U.S.C. § 1082(a)(2), does not bar "specific relief requiring the Secretary of Education to perform a duty imposed by law . . . if the conduct alleged is determined to be beyond the statutory limits on the Secretary's power." *Gearhart v. United States Dep't of Educ.*, No. 19-CV-00750-YGR, 2019 WL 5535798, at *2 (N.D. Cal. Oct. 25, 2019); *see also Cal. Cosmetology Coal. v. Riley*, 110 F.3d 1454, 1459-61 (9th Cir. 1997) (upholding injunction against enforcement of regulations by Secretary of Education that contradict the section of the HEA they were intended to implement); *Weingarten v. DeVos*, No. 19-cv-2056 (DLF), 2020 WL

---

[8] Some courts further note that the *Mellon* bar is limited to congressional action and does not preclude *parens patriae* actions against executive agency action. *See, e.g.*, *Aziz v. Trump*, 231 F. Supp. 3d 23, 30 (E.D. Va. 2017) ("[M]ischaracterization of *Mellon* . . . to speak of a 'prohibition' without further qualification. Importantly, [the case] addressed a state's challenge to congressional, rather than executive action.").

3412730, at \*10 (D.D.C. June 22, 2020) (despite HEA's anti-injunction provision, "the Court at least can vacate an arbitrary and capricious decision, declare the action unlawful, and remand to the agency for further proceedings consistent with the APA and the Court's ruling"). Here, California alleges that ED has not acted within its statutory authority by ignoring the TEPSLF mandate. Thus the HEA's anti-injunction provision does not bar California's requested relief.

Defendants' argument that California's requested declaratory relief should be rejected on prudential grounds likewise falls flat. Although the Ninth Circuit in *American Association of Cosmetology Schools v. Riley*, 170 F.3d 1250, 1253-54 (9th Cir. 1999), held that Section 1082 prohibits certain declaratory relief that would be plainly coercive, this Court has found that the HEA's anti-injunction provision does not bar all declaratory relief in connection with APA review. *Gearhart*, 2019 WL 5535798, at \*2 (citing cases). Here, Defendants' argument that this Court should decline declaratory relief for "prudential reasons" because a declaration would serve "no useful purpose" also is inconsistent with standard practice. *See, e.g.*, *Weingarten*, 2020 WL 3412730, at \*10 (rejecting ED's "no useful purpose" argument because the case relied upon— *Bank of Am. NT & SA v. Riley*, 940 F. Supp. 348, 350, 351 n.5 (D.D.C. 1996)—relates not to Article III redressability but to the doctrine of prudential mootness, and because assuming *arguendo* the merits of plaintiffs' claims, "declaring the Department's failure arbitrary and capricious, and remanding for further proceedings consistent with the APA, surely would serve a useful purpose").

In addition, this District and others recently have entered injunctions and other relief against Secretary DeVos and the U.S. Department of Education when they have exceeded their authority under the HEA. *See, e.g.*, *Michigan v. DeVos*, No. 3:20-CV-04478-JD, 2020 WL 5074397, at \*9 (N.D. Cal. Aug. 26, 2020) (enjoining ED from implementing guidance and interim final rule restricting discretion of state higher education institutions to determine which students receive CARES Act financial assistance grants); *Oakley v. Devos*, No. 20-CV-03215-YGR, 2020 WL 3268661, at \*19 (N.D. Cal. June 17, 2020) (same); *Calvillo Manriquez v. DeVos*,

345 F. Supp. 3d 1077, 1110 (N.D. Cal. 2018) (enjoining ED from using the new "average earnings rule" for borrower-defense claims based on alleged violations of the Privacy Act).[9]

For purposes of Article III standing, California's requested relief is sufficiently likely to redress its alleged injuries. Defendants will have the opportunity to dispute any specific requested relief in later proceedings.

## V.   CALIFORNIA'S APA CLAIMS ARE ADEQUATELY PLEADED

Separate from justiciability and standing, Defendants argue that California's complaint should be dismissed under Rule 12(b)(6). However, California's complaint both alleges cognizable legal theories under the APA and facts sufficient to support its APA claims. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.").

Defendants seek to have the Court pre-determine the merits of California's APA claims without the benefit of an administrative record, arguing the claims are "meritless." Specifically, Defendants argue that because "at least 1,310 borrowers have obtained relief under the program" California cannot proceed with its failure to act claims, Claims 1 and 2. Mot. at p. 24. Granting a small number of applications, however, does not establish as a matter of law that Defendants have acted to "develop and make available a simple method for borrowers to apply for loan cancellation under this section within 60 days." Indeed, California plausibly alleges that Defendants' actions instead have (intentionally or otherwise) caused further confusion and delay directly contrary to the purpose and intent of the TEPSLF mandate.

In effect, Defendants seek to challenge California's alternative pleading. California

---

[9] To the extent Defendants intend to argue mootness, this also fails. "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988). Defendants have not submitted any evidence showing the alleged violation has been cured. Defendants' argument that they plan, in the future, to follow one of several reforms suggested by the GAO neither establishes that the issues presented by California's complaint are no longer live, nor that this Court cannot grant any effective relief. Moreover, California disputes combining the PSLF and TEPSLF forms alone would be sufficient to meet Defendants' statutory obligation. Compl. ¶ 88-89. On the current record, Defendants cannot meet their heavy burden to establish mootness nor do they argue mootness.

1
2
3
4
5
6
7
8

alleges that Defendants' failure to act is reviewable either under Claims 1 and 2 as unlawfully withheld or unreasonably delayed agency action, or, alternatively, under Claim 3 their actions are subject to review under the APA's arbitrary, capricious, and abuse of discretion standard. Such alternative pleading is permitted. California and the Court should have the benefit of the administrative record to determine the merits of each claim, which are sufficiently pleaded in the alternative. California's Claims 1 and 2 as pleaded pass the plausibility standard. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

9
10
11
12
13
14
15

For Claim 3, Defendants again argue the merits, asserting that because Congress gave Defendants a short deadline, Defendants' actions "can hardly be considered arbitrary or capricious or otherwise contrary to law." Mot. at p. 25. Defendants' attempt to argue the merits is inappropriate. California has sufficiently pleaded that to the extent Defendants claim to have satisfied their statutory duties, their action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2). Accepting California's allegations as true, California's APA claim is plausible and sufficiently pleaded.

16
17
18
19
20

It is noteworthy that Defendants acknowledge in their motion that the TEPSLF application process is not simple for borrowers and that they still have not implemented the "primary proposal" for a simple application method, one of the GAO's several recommendations. Mot. at pp. 3, 15, 24. California invokes the jurisdiction of this Court to require Defendants to promptly fulfill the statutory mandate.

21
22
23

**CONCLUSION**

For these reasons, the Court should deny Defendants' motion to dismiss.

24
25
26
27
28

Dated: October 29, 2020                                   Respectfully submitted,

/s/ Rose C. Goldberg
ROSE C. GOLDBERG
Deputy Attorney General

25